**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>     v.<br><br>THE FOLLOWING DOMAIN NAMES:<br><br>ROJADIRECTA.ORG, and<br>ROJADIRECTA.COM,<br><br>               Defendants *in rem*. | Civil Action No. 11-cv-4139<br>(PAC)(FM) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CLAIMANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    FACTS ......................................................................................................................2

     A.     The Government's Seizure of the Domain Names .................................................2

     B.     Puerto 80 and Rojadirecta .....................................................................................3

     C.     Allegations of the Complaint .................................................................................4

III.   LEGAL STANDARD ................................................................................................5

IV.    ARGUMENT ............................................................................................................6

     A.     The Allegations in the Complaint Show that Puerto 80 Did Not Commit
          Direct Copyright Infringement ...............................................................................6

     B.     No Theory of Secondary Liability Can Support Forfeiture Here ...........................8

        1.     There is no criminal offense of contributory infringement.....................................8

        2.     Neither conspiracy nor aiding and abetting liability are supported by the
            forfeiture statute under which the government brings the complaint. ...................11

     C.     The Government Does Not Allege Facts that Support the Inference that
          Any Infringement Was Willful ...............................................................................12

     D.     Copyright Laws Do Not Apply Extraterritorially .................................................15

V.     CONCLUSION ........................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arista Records, Inc. v. MP3Board, Inc.*,
  No. 00 CIV. 4660(SHS), 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002) ................................ 7

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009) ................................................................................ 5, 6, 12

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 5

*Bernstein v. JC Penney, Inc.*,
  No. 98-2958 R EX, 1998 WL 906644 (C.D. Cal. Sept. 29, 1998) .......................... 7

*Cheek v. United States*,
  498 U.S. 192 (1991) ........................................................................................ 13

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991) ................................................................................ 4

*CoStar Group, Inc. v. LoopNet, Inc.*,
  373 F.3d 544 (4th Cir. 2004) ............................................................................. 7

*Danjaq LLC v. Sony Corp.*,
  263 F.3d 942 (9th Cir. 2001) ........................................................................... 14

*Demetriades v. Kaufmann*,
  690 F. Supp. 289 (S.D.N.Y. 1988) ..................................................................... 9

*Dowling v. United States*,
  473 U.S. 207 (1985) ..................................................................................... 9, 10

*Elmo Shropshire v. Canning*,
  2011 WL 90136 (N.D. Cal. 2011) .................................................................... 15

*Fitzgerald Publ'g Co., Inc. v. Thomas Publ'g Co.*
  807 F.2d 1110 (2d Cir. 1986) .......................................................................... 13

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009) ................................................................................. 5

*Hotel Emps. & Rest. Emps. Union, Local 100 of N.Y*,
  311 F.3d 534 (2d Cir. 2002) ............................................................................... 4

*In re 650 Fifth Ave. & Related Props.*,
  No. 08-cv-10934-RJH, 2011 WL 1135058 (S.D.N.Y. Mar. 29, 2011) ............... 5, 14

*In re Aimster Copyright Litig.*,
  334 F.3d 643 (7th Cir. 2003) ........................................................................... 10

*Kaplan v. Al Jazeera,*
　　No. 10-5298, 2011 WL 2314783 (S.D.N.Y. June 7, 2011) ................................... 12

*Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit,*
　　113 U.S. 1160 (1993) ...................................................................................... 12

*Liparota v. United States,*
　　471 U.S. 419 (1985) .......................................................................................... 8

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.,*
　　149 F.3d 987 (9th Cir.1998) .............................................................................. 16

*McLaurin v. Paterson,*
　　No. 07-3482-PAC, 2008 WL 3402304 (S.D.N.Y. 2008) ...................................... 4

*Murawski v. Pataki,*
　　514 F. Supp. 2d 577 (S.D.N.Y. 2007) ................................................................. 4

*Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers,*
　　414 U.S. 453 (1974) ........................................................................................ 12

*Omega S.A. v. Costco Wholesale Corp.,*
　　541 F.3d 982 (9th Cir. 2008) ............................................................................ 15

*Online Policy Group v. Diebold, Inc.,*
　　337 F. Supp. 2d 1195 (N.D. Cal. 2004) ............................................................... 7

*Palmer v. Braun,*
　　376 F.3d 1254 (11th Cir. 2004) ........................................................................ 15

*Perfect 10, Inc. v. Amazon.com, Inc.,*
　　487 F.3d 701 (9th Cir. 2007) ....................................................................... 7, 16

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
　　494 F.3d 788 (9th Cir. 2007) .............................................................................. 9

*Puerto 80 Projects, S.L.U. v. United States,*
　　No. 11-3983-PAC (S.D.N.Y June 13, 2011) ................................................... 2, 11

*Robert Stigwood Group Ltd. v. O'Reilly,*
　　530 F.2d 1096 (2d Cir. 1976) ............................................................................ 15

*Roberts v. Keith,*
　　No. 04-10079-LAP, 2009 WL 3572962 (S.D.N.Y. 2009) .................................... 15

*Screws v. United States,*
　　325 U.S. 91 (1945) .......................................................................................... 13

*Stewart v. Adidas A.G.,*
　　No. 96 - 6670-DLC, 1997 WL 218431 (S.D.N.Y. Apr. 30, 1997) ........................ 16

*Ticketmaster Corp. v. Tickets.com, Inc.,*
　　54 U.S.P.Q.2d 1344 (C.D. Cal. 2000) ................................................................. 7

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
   996 F.2d 1366 (2d Cir. 1993) .................................................................. 13

*United States v. $1,399,313.74 in U. S. Currency*,
   591 F. Supp. 2d 365 (S.D.N.Y. 2008) ...................................................... 5

*United States v. $15,270,885.69 Formerly on Deposit*,
   No. 99-10255-RCC, 2000 WL 1234593 (S.D.N.Y. Aug. 31, 2000) ........ 5

*United States v. Acevedo-Cruz*,
   No. CRIM.04-0381-DRD, 2006 WL 448680 (D.P.R. Feb. 23, 2006) ....... 13

*United States v. Backer*,
   134 F.2d 533 (2d Cir. 1943) .................................................................... 13

*United States v. Daccarett*,
   6 F.3d 37 (2d Cir. 1993) .......................................................................... 5

*United States v. Heilman*,
   614 F.2d 1133 (7th Cir. 1980) ................................................................. 13

*United States v. Lanier*,
   520 U.S. 259 (1997) ............................................................................ 8, 10

*United States v. Moran*,
   757 F. Supp. 1046 (D. Neb. 1991) .......................................................... 13

*United States v. Portrait of Wally, A Painting By Egon Schiele*,
   No. 99-9940-MBM, 2002 WL 553532 (S.D.N.Y. Apr. 12, 2002) ........... 12

*United States v. Rose*,
   149 U.S.P.Q. 820 (S.D.N.Y. 1966) ......................................................... 13

*United States v. W. Wise*,
   550 F.2d 1180 (9th Cir. 1977) ................................................................. 13

*Update Art, Inc. v. Modiin Publ'g, Ltd.*,
   843 F.2d 67 (2d Cir. 1988) ...................................................................... 15

## **Statutes**

17 U.S.C. § 101 ............................................................................................ 17

17 U.S.C. § 504 ............................................................................................ 13

17 U.S.C. § 506 ...................................................................................... passim

18 U.S.C. § 2 ........................................................................................... 10, 11

18 U.S.C. § 371 ....................................................................................... 10, 11

18 U.S.C. § 981 ............................................................................................ 11

18 U.S.C. § 983 .......................................................................................... 2, 5

18 U.S.C. § 1983 ................................................................................................ 12

18 U.S.C. § 2319 ............................................................................... 4, 5, 16, 17

18 U.S.C. § 2323 ........................................................................................ 10, 11

**<u>Other Authorities</u>**

4-15 Nimmer on Copyright § 15.01 ..................................................................... 9

6 Patry on Copyright § 21:46 ............................................................................ 11

Department of Justice 2010 Joint Strategic Plan on Intellectual Property
    Enforcement ...................................................................................................... 8

Department of Justice, Computer Crime & Intellectual Property Section,
    Prosecuting IP Crimes Manual ................................................................ 9, 10, 15

H.R. Rep. 109-33(I), P.L. 109-9 Family and Entertainment and Copyright Act of
    2005 ................................................................................................................... 16

House Report, Copyright Felony Act, H.R. Rep. No. 997,
    102nd Cong., 2nd Sess. 1992, 1992 U.S.C.C.A.N. 3569, P.L. 102-56 ........... 12, 14

Jon Carson, White House Blog,
    *Medicaid: More than Just Numbers*, July 8, 2011 ...................................... 8

National Archives Blog, *DC-area Researchers: Mark your calendars for the next
    researcher meeting*, Comment from Lucy Barber, March 14, 2010 ...................... 7

Paul Goldstein, Goldstein on Copyright sec. 13.3 (2005) ............................................ 9

S. 3804—111th Congress: Combating Online Infringement and Counterfeits Act
    (2010)................................................................................................................ 10

S. 968—112th Congress: Protecting Real Online Threats to Economic Creativity
    and Theft of Intellectual Property Act (2011)......................................................... 10

Website of Sen. Patrick Leahy—Leahy in the News......................................................... 8

WhiteHouse.gov, Office of Science and Technology Policy Blog,
    *"Boulder is for Startups,"* Posted by Phil Weiser on May 11, 2011 ....................... 8

**<u>Rules</u>**

Federal Rule of Civil Procedure 9 ............................................................................ 12

Federal Rule of Civil Procedure 12 .......................................................................... 5

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture
    Actions, Rule G................................................................................................... 5

## I.       INTRODUCTION

In an unprecedented effort to expand both copyright liability and the reaches of civil forfeiture law, the United States government seized two domain names based on its assertion that there was probable cause to believe that *some* of the material *linked to* by the website to which the domain names pointed *might* be infringing.   There is no assertion that the allegedly infringing material is found on the website itself.  The government filed the instant Complaint following months of negotiations with the operator of the website, Puerto 80 Projects, S.L.U. ("Puerto 80") for return of the domain names, alleging that Puerto 80 used the domain names to commit criminal copyright infringement.

Given the allegations of the Complaint, the government's seizure of the Rojadirecta domain names is remarkable in many respects:

First, the government acknowledges that Rojadirecta, the site operating under the seized domain names, was not hosting any infringing material.  Rather, the Complaint recognizes that Rojadirecta was linking to material residing elsewhere on the Internet—something which courts across the country have held to not constitute infringement.  Thus, the government has not and cannot allege that Puerto 80 directly infringed any work, which it must do in order to establish criminal liability.

Second, the government does not allege that any theory of secondary liability supports forfeiture, and indeed, no theory of secondary liability supports forfeiture here.  There is no criminal offense of contributory copyright infringement because federal crimes are solely creatures of statutes, and because the copyright statute itself does not create liability for contributory copyright infringement.  Moreover no general theory of secondary liability—such as aiding and abetting or conspiracy to commit criminal copyright infringement—supports forfeiture, because the forfeiture statute under which the government brings this action does not authorize seizure or forfeiture based on alleged violations of the crimes of aiding and abetting or conspiracy.

Third, only willful copyright infringement will support a criminal copyright violation, and the government has not alleged, and could not prove, that any infringement (even if proven) could be willful.  Not only would any finding of direct infringement be unprecedented, but the government's allegations come in the wake of copyright infringement litigation in Spain over Spanish-based Rojadirecta's legality.  Two separate courts have declared Rojadirecta to be operating lawfully.  Given previous judicial approval of its actions, Puerto 80 cannot be said to be willfully engaged in copyright infringement, as the criminal copyright statute requires.  And indeed the government has not even bothered to allege this element of its claim.

Fourth, the allegations of infringement are directed at conduct that occurred outside the United States, and therefore cannot support infringement under U.S. copyright law.

Each of these shortcomings establishes an independent basis for dismissal of the Complaint.  Accordingly, Puerto 80 respectfully requests the Court to grant its motion, dismiss the Complaint and order the immediate return of the seized domain names.

## II.    FACTS

### A.    The Government's Seizure of the Domain Names

On February 1, 2011, Immigration and Customs Enforcement of the U.S. Department of Homeland Security ("ICE") seized the subject domain names (rojadirecta.com and rojadirecta.org) which pointed to the "Rojadirecta" website.  The domain names were seized pursuant to warrants issued in this District, and were based on an ICE agent's assertion that probable cause existed to believe that the domain names were being used to commit criminal violations of copyright law.  (Verified Complaint, ECF No. 1 ("Compl.") ¶¶ 19, 20.)

As set out in more detail in Puerto 80's Petition for Release of Seized Property, *Puerto 80 Projects, S.L.U. v. United States*, No. 11-3983-PAC (S.D.N.Y June 13, 2011) ECF. No. 1 ("Petition"), Puerto 80 was not notified of the seizure at the time, and its owner did not find out that the domains had been seized until he visited them shortly after the site was disabled.  On February 3, 2011, Puerto 80 sent a formal request for the immediate return of its property pursuant to 18 U.S.C. § 983(f).  The government did not formally respond to that request within

15 days, nor did it return the property.  On February 15, 2011, U.S. Customs and Border Patrol issued CAFRA Seizure Notices.  On March 22, 2011, Puerto 80 returned its Asset Claim Forms to the government.  Following weeks of failed negotiations with the government, and with the government still not having filed a civil forfeiture complaint, on June 13, 2011 Puerto 80 filed the Petition with this Court, seeking the immediate return of its domain names pending the outcome of any forfeiture proceedings.  Four days later, on June 17, 2011, the government filed the instant Complaint for forfeiture of the domain names.

### B.      Puerto 80 and Rojadirecta

Rojadirecta is owned by Spanish-based Puerto 80 Projects, S.L.U.  It hosts forums in which users can discuss and post information about highlights from various sporting events (among other topics), and indexes links to streams of sporting events that can already be found on the Internet.  *See* Compl. Ex. A (screenshot of Rojadirecta homepage showing link to "forums" in upper left hand corner); Compl. ¶ 14 (describing Rojadirecta as a "linking" website and admitting that when a user clicked on a link found on the Rojadirecta website, the content that was then streamed to the user "ran on a live stream *from another website*" (¶ 14(c), emphasis added)).  Significantly, following a multi-year legal battle, two Spanish courts specifically held that the website was operating legally and did not infringe copyrights.  Request for Judicial Notice ("RJN") Ex. 1.

The Rojadirecta site has been listed among the 100 most popular sites in Spain in terms of traffic and, according to the Complaint, was just outside the top 100 most popular websites in Spain shortly before the domains were seized.  Compl. ¶¶ 14(d)-(e).  The site had approximately 865,000 registered users, many of whom use their accounts to engage in discussions of sports, politics, and a variety of other subjects on Rojadirecta discussion boards – discussions the government does not and cannot contend infringes any copyright.   Compl. Ex. A (screenshot of Rojadirecta homepage showing link to "forums" in upper left hand corner).[1]

---

[1] This Court can properly take judicial notice of the entire Rojadirecta website, now available at www.rojadirecta.es.  The government's Complaint has put the content of that website into evidence by attaching only excerpts from the website to the Complaint.  Accordingly, this Court

### C.      Allegations of the Complaint

Most of the allegations in the Complaint are directed toward describing the features of linking websites generally and the "problem of piracy of live sports broadcasting over the Internet." *See, e.g.,* Compl.  ¶¶ 8, 10.  Significantly, the Complaint acknowledges that the Rojadirecta site does not host any of the material that was allegedly being infringed. Specifically, the Complaint alleges that Rojadirecta was a "linking" website, which the government describes as one that provides links to files on third-party websites.  Compl. ¶¶ 12, 14(a), (c).  The Complaint also asserts that the Rojadirecta site "provided links to daily live sporting events and Pay-Per-View events, as well as downloadable sporting events . . . previously aired," *id.* ¶ 14(a), and that the content linked to from the Rojadirecta website "ran on a live stream from another website," ¶ 14(c).  Notably, there is not a single allegation that any infringing content is hosted by the Rojadirecta site itself, because none is.

The Complaint alleges that the domain names are subject to forfeiture because they were "used or intended to be used to willfully infringe a copyright in violation of 18 U.S.C. § 2319 and/or unlawfully transmit copyrighted sporting event telecasts in violation of 18 U.S.C. § 2319B."  Compl. ¶ 24.  18 U.S.C. § 2319 prescribes penalties for willful copyright infringement under 17 U.S.C. § 506(a).  Section 506(a)(1) prohibits, *inter alia*, willful infringement of a copyright for "purposes of commercial advantage or private financial gain" or "by the reproduction or distribution, including by electronic means, during any 180-day period, of 1 or more copies or phonorecords of 1 or more copyrighted works, which have a total retail value of

---

may consider the full site for context.  *See, e.g.*, *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) ("When a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nonetheless take that document into consideration in deciding a defendant's motion to dismiss); *Hotel Emps. & Rest. Emps. Union, Local 100 of N.Y*, 311 F.3d 534, 549 (2d Cir. 2002) (noting that website's contents may be subject to judicial notice where the site's authenticity has not been questioned); *Murawski v. Pataki*, 514 F. Supp. 2d 577, 589 (S.D.N.Y. 2007) ("In support of his motion to dismiss plaintiff's claim of defamation, Gunzburger has submitted a copy of the website page containing the allegedly defamatory statement.  Although plaintiff asks the Court not to consider this evidence, the Court will do so because plaintiff relies on the statement in his Complaint and the statement is integral to plaintiff's action."); *see also McLaurin v. Paterson*, No. 07-3482-PAC, 2008 WL 3402304, at *9 (S.D.N.Y. 2008) (collecting cases).  Examples of a few forum pages from the Rojadirecta site are attached as Exhibit 2 to the RJN.

more than $1,000." 17 U.S.C. § 506(a)(1)(A)-(B).  18 U.S.C. § 2319B pertains to the unauthorized recording of motion pictures in movie theaters.  The Complaint contains no factual allegations relating to motion pictures or movie theaters.

## III.   LEGAL STANDARD

A motion to dismiss an *in rem* forfeiture action is governed by Federal Rule of Civil Procedure 12(b) (as applied post-*Iqbal* and *Twombly*),[2] and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules").  *See In re 650 Fifth Ave. & Related Props.*, No. 08-cv-10934-RJH, 2011 WL 1135058, at *9 (S.D.N.Y. Mar. 29, 2011).  Under Rule G(2)(f), a forfeiture complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  *Id*.  Although "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property," 18 U.S.C. § 983(a)(3)(D), the government "must 'assert specific facts supporting an inference that the property is in fact subject to forfeiture.'"  *United States v. $1,399,313.74 in U. S. Currency*, 591 F. Supp. 2d 365, 369 (S.D.N.Y. 2008).  These pleading requirements are "more stringent than the general pleading requirements . . . [,] an implicit accommodation to the drastic nature of the civil forfeiture remedy."  *United States v. $15,270,885.69 Formerly on Deposit*, No. 99-10255-RCC, 2000 WL 1234593, at *2-3 (S.D.N.Y. Aug. 31, 2000) (quoting *United States v. Daccarett*, 6 F.3d 37, 47 (2d Cir. 1993)).

To the extent they do not conflict with the Supplemental Rules, the Federal Rules of Civil Procedure apply.  When considering a motion to dismiss under Rule 12(b)(6), the Court will "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor."  *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "'[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a

---

[2] *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id*. (quoting *Iqbal*, 129 S.Ct. 1950).

## IV.   ARGUMENT

The Complaint, which focuses entirely on Puerto 80's actions, fails to allege facts that, if proven, would suffice to show that Puerto 80's operation of the Rojadirecta site constitutes criminal copyright infringement.

In order to prove criminal copyright infringement, the government must show (1) willful (2) infringement of a valid copyright (3) "committed—(A) for purposes of commercial advantage or private financial gain; (B) by the reproduction or distribution . . . during any 180–day period, of 1 or more copies . . . of 1 or more copyrighted works, which have a total retail value of more than $1,000; or (C) by the distribution of a work being prepared for commercial distribution . . ., if such person knew or should have known that the work was intended for commercial distribution."  17 U.S.C. § 506(a).  The Complaint fails to allege facts supporting the inference that at least two of these elements have been met.

### A.   The Allegations in the Complaint Show that Puerto 80 Did Not Commit Direct Copyright Infringement

To demonstrate criminal infringement of a valid copyright, the government must prove the same elements as "those in a civil copyright infringement case—ownership of a valid copyright and copying."  *United States v. Larracuente*, 952 F.2d 672, 673 (2d Cir. 1992).  The government here admits that Puerto 80 did not copy any works.   The Complaint repeatedly acknowledges that Rojadirecta merely provided links to content that already exists on the Internet.  *See, e.g.*, Compl. ¶ 11 ("The Defendant Domain Names resolve to 'linking' websites."); ¶ 12 ("[A]gents discovered that 'linking' websites generally collect and catalog links to files on third-party websites . . .") (footnote omitted); ¶ 14(c) (stating that "the content [accessed from the Rojadirecta site] ran on a live stream *from another website*") (emphasis added).

Because Puerto 80 did not copy anything, it cannot be found liable for direct infringement by virtue of hosting links to content.  This is a firmly established legal proposition that has been affirmed time and time again by many courts.  *See CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 546 (4th Cir. 2004) ("Because LoopNet, as an Internet service provider, is simply the owner and manager of a system used by others who are violating CoStar's copyrights and is not an actual duplicator itself, it is not *directly* liable for copyright infringement.") (emphasis in original).  *Accord Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 717 (9th Cir. 2007) (party from whose site content is actually transmitted and subsequently displayed on the end-user's screen is responsible for display, not search engine that merely links to that content); *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1202 n.12 (N.D. Cal. 2004) ("hyperlinking per se does not constitute direct copyright infringement because there is no copying."); *Arista Records, Inc. v. MP3Board, Inc.*, No. 00 CIV. 4660(SHS), 2002 WL 1997918, at *4 (S.D.N.Y. Aug. 29, 2002) (linking to content does not implicate distribution right and thus, does not give rise to liability for direct copyright infringement); *Ticketmaster Corp. v. Tickets.com, Inc.*, 54 U.S.P.Q.2d 1344, 1346 (C.D. Cal. 2000) ("[H]yperlinking does not itself involve a [direct] violation of the Copyright Act (whatever it may do for other claims) since no copying is involved. . . . [It] is analogous to using a library's card index to get reference to particular items, albeit faster and more efficiently."); *Bernstein v. JC Penney, Inc.*, No. 98-2958 R EX, 1998 WL 906644, at *1 (C.D. Cal. Sept. 29, 1998) (granting motion to dismiss on the ground that hyperlinking cannot constitute direct infringement).

Puerto 80's website does what millions of other websites do—it links to material that already exists on the Internet.  *See, e.g.*, http://www.google.com, http://www.bing.com; National Archives Blog, *DC-area Researchers: Mark your calendars for the next researcher meeting*, Comment from Lucy Barber, March 14, 2010 *available at* http://blogs.archives.gov/blog/2010/03/04/dc-area-researchers-mark-your-calendars-for-the-next-researcher-meeting/ (linking to third-party video on YouTube).  If linking to copies of copyrighted material existing on the Internet in and of itself constituted direct copyright

infringement, nearly every page on the Internet would be guilty of infringement—including websites hosted by the Department of Justice and the White House.  *See, e.g.,* Department of Justice 2010 Joint Strategic Plan on Intellectual Property Enforcement at p. 54 fn.16 *available at* http://www.cybercrime.gov/Joint_Strategic_Plan_On_IP_Enforcement.pdf (providing hyperlinks to copies of articles on the New York Times and Detroit Chronicle); Jon Carson, White House Blog, *Medicaid: More than Just Numbers*, July 8, 2011, *available at* http://www.whitehouse.gov/blog/2011/07/08/medicaid-more-just-numbers (linking to articles from various news sources); WhiteHouse.gov, Office of Science and Technology Policy Blog, *"Boulder is for Startups"*, Posted by Phil Weiser on May 11, 2011 at 9:06 AM EDT, available at http://www.whitehouse.gov/administration/eop/ostp/blog?page=5 (linking to, *inter alia*, BusinessWeek and New York Times articles); Website of Sen. Patrick Leahy—Leahy in the News, http://leahy.senate.gov/press/in_the_news/ (linking to, and in many instances reposting in their entirety, articles from third-party sources).

Linking is, quite simply, the basis of the Internet as we know it.  It is no wonder, then, that courts are virtually unanimous in concluding that merely linking to another page is not an act of direct copyright infringement.  Accordingly, the government's allegations of criminal copyright infringement based on linking must fail.  Linking is not even civil, much less criminal, copyright infringement.

**B.    No Theory of Secondary Liability Can Support Forfeiture Here**

**1.    There is no criminal offense of contributory infringement.**

It is true that those who link to infringing material may sometimes face civil copyright liability for contributory or other indirect copyright infringement.  But that cannot help the government here, because there is no federal criminal offense of contributory or indirect copyright infringement.  That is because there is no statutory basis for the theory of criminal contributory infringement, and federal crimes "are solely creatures of statute."  *Liparota v. United States*, 471 U.S. 419, 424 (1985); *accord United States v. Lanier*, 520 U.S. 259, 267 n.6 (1997) ("Federal crimes are defined by Congress, not the courts . . .").  "Accordingly, when

assessing the reach of a federal criminal statute, [courts] must pay close heed to language, legislative history, and purpose in order strictly to determine the scope of the conduct the enactment forbids." *Dowling v. United States*, 473 U.S. 207, 213, 228-29 (1985).  In determining whether Congress intended to criminally proscribe a particular act, a "narrow interpretation" is appropriate.  *Id.*

Secondary liability in civil copyright law is a common law creation that finds no support in the text of the copyright statute.  *See Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984) ("The Copyright Act does not expressly render anyone liable for infringement committed by another.");  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* 494 F.3d 788, 794-95 (9th Cir. 2007) ("Contributory copyright infringement is a form of secondary liability with roots in the tort-law concepts of enterprise liability and imputed intent."); *Demetriades v. Kaufmann*, 690 F. Supp. 289, 291-92 (S.D.N.Y. 1988) ("Federal copyright law, unlike patent law, does not expressly create any form of derivative, third-party liability.").  Accordingly, the reach of the criminal copyright statute—which is predicated on liability for acts proscribed by the copyright statute—does not extend to contributory infringement.

Moreover, we are not aware of any court that has held someone criminally liable for "contributory infringement" under the copyright statute alone (*i.e.*, in the absence of proving the elements of aiding-and abetting or conspiracy).  Indeed, we have found no evidence the government has ever even charged such a purported crime, and the Department of Justice's manual Prosecuting Intellectual Property Crimes and the leading Goldstein and Nimmer treatises on copyright law are devoid of any reference to any such claim.  *See* Paul Goldstein, Goldstein on Copyright § 13.3 (2005); 4-15 Nimmer on Copyright § 15.01.

In fact, the Department of Justice IP Prosecution Manual (the "Manual") implicitly recognizes that there is no crime of contributory copyright infringement.  In discussing whether an "infringement" occurs to support a charge for criminal infringement, the Manual points only to direct copying.  Department of Justice, Computer Crime & Intellectual Property Section, Prosecuting IP Crimes Manual § II.B.3.  It never discusses the possibility of charging criminal

contributory copyright infringement, or what the elements of that hypothetical common-law crime would be.  Instead, the Manual suggests bringing "accessory charges, such as aiding-and-abetting or inducement, 18 U.S.C. § 2, or conspiracy, 18 U.S.C. § 371" for secondary liability. *See id.* § II.F; *accord In re Aimster Copyright Litig.*, 334 F.3d 643, 651 (7th Cir. 2003) (aiding and abetting is "the criminal counterpart to contributory infringement").  The government chose not to bring those charges here or allege the elements of aiding and abetting.  Even had it done so, those charges would not support forfeiture of the domain names because, as set forth in more detail below, *the forfeiture statute does not permit seizure based on those crimes.  See* 18 U.S.C. § 2323 (enumerating statutory violations pursuant to which forfeiture may be pursued).  *See infra.*, IV.B.2 (pp. 11-12).

The absence of a crime of contributory copyright infringement is further evidenced by Congress' repeated—and so far unsuccessful—attempts to pass legislation aimed to address the conduct the government is attempting to prosecute here.  *See* S. 968—112th Congress: Protecting Real Online Threats to Economic Creativity and Theft of Intellectual Property Act (2011) (aimed at websites that link to infringing materials), RJN Ex. 3; S. 3804—111th Congress: Combating Online Infringement and Counterfeits Act (2010) (proposing to authorize the Justice Department to file an *in rem* civil action against a domain name used to access an Internet site or sites "dedicated to infringing activities."), RJN Ex. 4.  Indeed, it would be remarkable to read a statute that is entirely silent on the subject of indirect infringement as creating a crime of indirect infringement when the government itself is telling Congress that it currently lacks the statutory authority it needs to do so.  As the Supreme Court put it in *Dowling*, "the deliberation with which Congress over the last decade has addressed the problem of copyright infringement for profit, as well as the precision with which it has chosen to apply criminal penalties in this area, demonstrates anew the wisdom of leaving it to the legislature to define crime and prescribe penalties."  *Dowling*, 473 U.S. at 228.  On these facts, due process precludes the government from criminally charging Rojadirecta with indirect copyright infringement.  *United States v. Lanier*, 520 U.S. 259, 266 (1997) ("[D]ue process bars courts

from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope").[3]

### 2. Neither conspiracy nor aiding and abetting liability are supported by the forfeiture statute under which the government brings the complaint.

Puerto 80's domain names were not seized based on an allegation of aiding and abetting or conspiracy, and the government did not bring those charges in its forfeiture complaint. Even if it had, those charges would not support forfeiture of the domain names because the forfeiture statute under which the government is proceeding does not permit seizure based on those crimes. *See* 18 U.S.C. § 2323 (permitting seizure based on alleged violations of specific statutes, not including 18 U.S.C. §§ 2 or 371). This is especially significant because other forfeiture provisions, based on other substantive offenses, *do* expressly permit forfeiture based on aiding and abetting, or conspiring to commit, such offenses. *See, e.g.,* 18 U.S.C. § 981(c), which provides for forfeiture of any property constituting or derived from a violation of certain specified criminal offenses "or a conspiracy to commit such offense."

Under the principle of *expressio unius est exclusio alterius*, § 2323 therefore should not be interpreted as *sub silentio* permitting forfeiture based on alleged liability for aiding and

---

[3] The government has not pled the elements of even a civil claim for contributory infringement, which include knowledge of the alleged infringement and either (a) active inducement of the direct infringement or (b) a material contribution to the direct infringement by providing an instrumentality with no substantial non-infringing use. *See* 6 Patry on Copyright § 21:46; *Roberts v. Keith*, No. 04-10079-LAP, 2009 WL 3572962, at *1 (S.D.N.Y. 2009) (granting defendant's motion for judgment on the pleadings as to count for contributory infringement where plaintiff did not allege that defendant had knowledge of the alleged infringement). As Puerto 80 described in more detail in its 983(f) Petition, and as is clear from the presence of the "forum" section of the Rojadirecta website as evidenced by Ex. A to the Complaint, its operation of the Rojadirecta site does not constitute contributory infringement because the subject domain names are capable of—and are, in fact, used for—substantial non-infringing uses. *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984). We recognize that this Court has stated that "the main purpose of the Rojadirecta websites . . . is to catalog links to the copyrighted athletic events . . . ." (Order at 4, *Puerto 80 Projects, S.L.U. v. United* States, No. 11-3983-PAC (S.D.N.Y. Aug. 4, 2011), ECF No. 15) ("Order"). We respectfully disagree with that conclusion, but for purposes of this motion, what is important is that "main purpose" is not the standard for contributory infringement. Rather, the question is whether the accused instrumentality has any "substantial non-infringing use." An examination of the website as a whole reveals hundreds of thousands of user posts on varying subjects, which, we submit, constitutes a substantial non-infringing use. *See* RJN Ex. 2.

abetting or conspiracy. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 113 U.S. 1160, 1163 (1993) (rejecting heightened pleading standard for §1983 actions based on Fed. R. Civ. Proc. 9(b)'s specific adoption of heightened pleading standard for certain other claims – "expressio unius est exclusio alterius"); *accord Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers*, 414 U.S. 453, 458 (1974) ("A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies" absent clear contrary evidence of legislative intent).

### C.    The Government Does Not Allege Facts that Support the Inference that Any Infringement Was Willful

Willfulness is an essential element of criminal copyright infringement. *See* 17 U.S.C. § 506(a). "Even if civil liability has been established, without the requisite *mens rea* it does not matter how many unauthorized copies or phonorecords have been made or distributed: No criminal violation has occurred." House Report, Copyright Felony Act, H.R. Rep. No. 997, 102nd Cong., 2nd Sess. 1992, 1992 U.S.C.C.A.N. 3569, P.L. 102-56. RJN Ex. 5.

The government appears to overlook this element, as the Complaint is devoid of a single factual allegation supporting the inference that any infringement was done willfully. Without alleging intent, the Complaint fails to support the inference that the property is subject to forfeiture. *See Kaplan v. Al Jazeera*, No. 10-5298, 2011 WL 2314783, at *3, 5 (S.D.N.Y. June 7, 2011) ("[T]he requirement to plead facts rather than legal conclusions applies to allegations of a defendant's intent as well as allegations about a defendant's conduct . . . Plaintiffs' allegation of Defendant's wrongful intent must be supported by 'sufficient factual matter' in order for Plaintiff to survive Defendant's motion to dismiss.") (quoting *Iqbal*, 129 S.Ct. at 1949). *See also United States v. Portrait of Wally, A Painting By Egon Schiele*, No. 99-9940-MBM, 2002 WL 553532, at *16 (S.D.N.Y. Apr. 12, 2002) (considering whether forfeiture complaint adequately alleged intent under predicate criminal statute).

In the context of criminal copyright infringement, courts have adopted the willfulness standard articulated by the Supreme Court in the context of criminal tax evasion and other criminal statutes. *United States v. W. Wise*, 550 F.2d 1180, 1186 (9th Cir. 1977) (defining willfulness by reference to *Screws v. United States*, 325 U.S. 91, 101-03 (1945)); *United States v. Heilman*, 614 F.2d 1133, 1137 (7th Cir. 1980) (same); *United States v. Acevedo-Cruz*, No. CRIM.04-0381-DRD, 2006 WL 448680, at *3 (D.P.R. Feb. 23, 2006) (defining willfulness by reference to *Cheek v. United States*, 498 U.S. 192 (1991)); *United States v. Moran*, 757 F. Supp. 1046, 1049 (D. Neb. 1991) (same). Thus, to show willfulness under the criminal copyright statute, "something more is required than the doing of the act proscribed by the statute." *Screws*, 325 U.S. at 91, 101. Rather, the government must show that the defendant acted with the specific intent to infringe—that "the defendant acted with the purpose of depriving the victim of the interest protected by that right." *United States v. Heilman*, 614 F.2d 1133, 1137 (7th Cir. 1980); *United States v. W. Wise*, 550 F.2d 1180, 1186 (9th Cir. 1977); *United States v. Rose*, 149 U.S.P.Q. 820, 824 (S.D.N.Y. 1966) (promulgating jury instructions on copyright infringement that "[a]n act is done willfully if done voluntarily and purposely and with specific intent to do that which the law forbids-that is to say, with bad purpose either to disobey or disregard the law").[4]

The government does not even attempt to plead facts supporting the inference that any infringement was done willfully. The government simply alleges that an ICE agent was able to

---

[4] In 1943, the Second Circuit held that willful intent only need be shown relating to intent to copy the works, not intent to infringe the copyright. Specifically, in *United States v. Backer*, 134 F.2d 533, 535 (2d Cir. 1943), the Second Circuit affirmed the conviction of a maker of collectible figurines that copied another artist's figurines even though the defendant told his supplier to make the figurines look "as closely as they might without 'copyright trouble.'" That case, however, arose before the 1976 Copyright Act and the 1997 amendments that redefined criminal copyright infringement. Since the passage of the 1976 Act, the Second Circuit has articulated the standard for willfulness, in a civil context, as "whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility." *See Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993); *see also Fitzgerald Publ'g Co. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1115 (2d Cir. 1986) ("We agree that a defendant's knowledge that its actions constitute an infringement establishes that the defendant acted willfully within the meaning of § 504(c)(2) for purposes of enhancing statutory damages."). The government has not met either standard in this case.

view allegedly copyrighted material by clicking on links on the Rojadirecta website.  Compl. ¶¶

13, 15.   This is insufficient to plead specific intent.  Even in the civil copyright context,

willfulness does not exist "merely because [plaintiff] had laid claim to certain rights."  *Danjaq*

*LLC v. Sony Corp*., 263 F.3d 942, 959 (9th Cir. 2001).  "To hold that willfulness must be

inferred whenever an alleged infringer uses an intellectual property in the face of disputed title

would turn every copyright claim into willful infringement . . . ." *Id*., *also* 17 U.S.C. § 506 (a)(2)

("[E]vidence of reproduction or distribution of a copyrighted work, by itself, shall not be

sufficient to establish willful infringement of a copyright.").  Because the Complaint is devoid of

a single allegation lending support to the notion that any infringement was done willfully, it fails

to "state sufficiently detailed facts to support a reasonable belief that the government will be able

to meet its burden of proof at trial."  *In re 650 Fifth Ave. & Related Props.*, No. 08-10934-RJH,

2011 WL 1135058, at *9 (S.D.N.Y. Mar. 29, 2011).

 Moreover, willfulness cannot be found where civil liability is unclear.  Given that

numerous U.S. courts have found that linking does not violate the Copyright Act, *see supra*,

section IV.A (pp. 6-7), the government cannot now argue that Puerto 80 should be criminally

liable for linking.  House Report, Copyright Felony Act, H.R. Rep. No. 997, 102nd Cong., 2d

Sess. 1992, 1992 U.S.C.C.A.N. 3569, P.L. 102-56 ("In cases where civil liability is unclear—

whether because the law is unsettled, or because a legitimate business dispute exists—the

Committee does not intend to establish criminal liability."), RJN Ex. 5.

 Lastly, the fact that Puerto 80's operation of the Rojadirecta site has been declared legal

by two courts in Spain negates willfulness.  Following years of litigation over allegations of

copyright infringement, a trial court ruled in 2009 that the Rojadirecta sites did not violate any

copyright laws, RJN Ex. 1.   One year later, in an appeal of that decision, the Madrid Provincial

Court affirmed the lower court's ruling and held that "the reported actions do not constitute a

crime, and the decision to dismiss the action is in accordance with law."  *Id.*  These rulings

negate any potential claim by the government that Puerto 80 lacked a good faith belief that its

operation of the Rojadirecta site was non-infringing or that Puerto 80 possessed the specific

intent to infringe anyone's copyrights.  *See* Department of Justice Prosecuting IP Crimes

Manual, available at

http://www.justice.gov/criminal/cybercrime/ipmanual/02ipma.htmlhttp://www.justice.gov/crimin

al/cybercrime/ipmanual/02ipma.html  § II.A.1  ("Given that willfulness requires an intent to

infringe, or at least constructive knowledge of infringement plus a reckless disregard of the

victim's rights, a finding of willfulness may be precluded if the defendant acted with a good-faith

belief that he was not infringing."); § II.B.2.b (acting pursuant to counsel's advice, even if

erroneous, is relevant to finding an absence of willfulness).

### D.    Copyright Laws Do Not Apply Extraterritorially

"It is well settled that 'the copyright laws generally do not have extraterritorial

application.'"  *Roberts v. Keith*, No. 04-10079-LAP, 2009 WL 3572962, at *4 (S.D.N.Y. Oct. 23,

2009) (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988)) (granting

defendant's motion for judgment on the pleadings on claim for copyright infringement where

copying took place abroad); *also Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004) ("[I]t is

only where an infringing act occurs in the United States that the infringement is actionable under

the federal Copyright Act . . ."); *Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096, 1101

(2d Cir. 1976) ("Copyright laws do not have extraterritorial operation.").  Moreover, the

Copyright Act "presumptively does not apply to conduct that occurs abroad even when that

conduct produces harmful effects within the United States."  *Omega S.A. v. Costco Wholesale

Corp.*, 541 F.3d 982 (9th Cir. 2008).  For example, in *Elmo Shropshire v. Canning*, 2011 WL

90136 (N.D. Cal. 2011), the defendant, a resident of Canada, uploaded a video to YouTube that

allegedly infringed the plaintiff's copyright in a song.  The court found that because the creation

and uploading of the video occurred entirely in Canada, the defendant could not be sued under

U.S. copyright law, notwithstanding the fact that it was made available in the United States via

the Internet.

As in *Canning*, the government's allegations with respect to the streamed events focus

solely on conduct that occurred abroad.  Rojadirecta's content (*i.e.*, its links and discussion

forums) is stored on servers residing outside the United States.  Compl. ¶ 14(f) (alleging that the domain names are hosted on a server in Canada).  There is no allegation that Puerto 80 operates its site from within the U.S., and indeed the Complaint appears to acknowledge that the Rojadirecta site is based in Spain.  *See id.* ¶ 14(d), (e).  The government accessed the links which directed them to the allegedly infringing material by visiting a site hosted outside the United States.  Thus, each step of the process occurs outside the United States, and any material that Puerto 80 has control over resides on serves outside the United States.  Therefore, no act of infringement by Puerto 80 has taken place in the United States.  *Accord Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 718-19 (9th Cir. 2007) (copying (and therefore infringement) occurs when material is stored on server).

At best, if the government were to allege a predicate act of copyright infringement that occurred within the United States, it would only be able to state a civil claim for secondary liability against a foreign site such as Rojadirecta.  *See, e.g., Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 992 (9th Cir.1998) (adopting rule that a party becomes liable for extraterritorial damages only when an act of infringement occurs within the United States, subjecting it to liability as an infringer (or contributory infringer) under the Copyright Act); *Stewart v. Adidas A.G.*, No. 96 - 6670-DLC, 1997 WL 218431, at *3 (S.D.N.Y. Apr. 30, 1997) (extraterritorial conduct can constitute claim for contributory infringement where it authorizes unlicensed reproductions in the United States).  But, as explained in section IV.B.1 above, there is no "crime" of "contributory infringement" that could support the instant forfeiture action.  At most, Puerto 80 could be held civilly liable for contributory infringement, which is not enough to support a forfeiture action.[5]

---

[5] Curiously, in paragraph 24 of the Complaint, the government references a statute that, *inter alia*, "penalizes those who camcord motion pictures in movie theaters [and] creates civil and criminal penalties for those who willfully distribute pre-release works."  H.R. Rep. 109-33(I), P.L. 109-9 Family and Entertainment and Copyright Act of 2005.  Specifically, the government alleges that the forfeiture is based, in part, on the "unlawful[] transmi[ssion] [of]  copyrighted sporting event telecasts in violation of 18 U.S.C. § 2319B."  Compl. ¶ 24.  But the facts alleged do not, and cannot, support such a claim.  Section 2319B prohibits the use of an "audiovisual recording device to transmit or make a copy of a motion picture or other audiovisual work protected under title 17, or any part thereof, from a performance of such work in a motion picture

## V.      CONCLUSION

For the reasons set forth above, Puerto 80 respectfully requests that the Court dismiss the Complaint without leave to amend, and enter an order directing the government to effectuate the immediate return of the rojadirecta.com and rojadirecta.org domain names to Puerto 80 by directing the domain names' registries and registrars to return and to make any changes necessary to reflect the return of the domain names to Puerto 80.


Dated:  August 5, 2011                                    Respectfully submitted,

                                                         DURIE TANGRI LLP

                                                         */s/ Johanna Calabria*

                                           By:    Mark A. Lemley (*Pro Hac Vice*)
                                                  Ragesh K. Tangri (*Pro Hac Vice*)
David Spears                                      Johanna Calabria (SBN JC3915)
Charlita Mays                                     Genevieve P. Rosloff (*Pro Hac Vice*)
SPEARS & IMES LLP                                 217 Leidesdorff Street
51 Madison Avenue, 25th Floor                     San Francisco, CA  94111
New York, NY 10010                                Tel. (415) 362-6666
Tel. (212) 213-6996

                                                  *Attorneys for Claimant*
*Attorneys for Claimant*                          PUERTO 80 PROJECTS, S.L.U.
PUERTO 80 PROJECTS, S.L.U.

---

exhibition facility."  18 U.S.C. § 2319B(a). The Complaint makes no mention or suggestion of any "audiovisual device" used to transmit or copy any work being performed in a "motion picture exhibition facility."  *See id*., § 2319B(g)(1) and 17 U.S.C. § 101 (defining "motion picture exhibition facility" as "a movie theater, screening room, or other venue that is being used primarily for the exhibition of a copyrighted motion picture, if such exhibition is open to the public or is made to an assembled group of viewers outside of a normal circle of a family and its social acquaintances.").  The government should not be granted leave to amend to allege a violation of this obviously-inapplicable statute.