UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 11 Civ. 4139 (PAC) (FM) |
| - v. - | : | ECF Case |
| THE FOLLOWING DOMAIN NAMES: | : | |
| ROJADIRECTA.ORG, and ROJADIRECTA.COM, | : | |
| | : | |
| Defendants-in-rem. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
THE MOTION BY CLAIMANT PUERTO 80 PROJECTS, S.L.U.
TO DISMISS THE VERIFIED COMPLAINT**


PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States of America


Christopher D. Frey
David I. Miller
Assistant United States Attorneys
- Of Counsel -

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.     LEGAL STANDARD ON A MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . 6

II.    THE COMPLAINT ADEQUATELY PLEADS THAT THE ROJADIRECTA
       DOMAIN NAMES WERE USED TO COMMIT OR FACILITATE THE
       COMMISSION OF CRIMINAL COPYRIGHT INFRINGEMENT . . . . . . . . . . . . . . 9

       A.     The Complaint Adequately Pleads the Commission of Criminal
              Copyright Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

              1.     The Complaint Adequately Pleads the Existence of a Valid
                     Copyright . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

              2.     The Complaint Adequately Pleads Infringing Acts . . . . . . . . . . . . . . 11

              3.     The Complaint Adequately Pleads Willful Infringement . . . . . . . . . . . 14

              4.     The Complaint Adequately Pleads Private Financial Gain, or
                     The Distribution of Copies of Copyrighted Works . . . . . . . . . . . . . . . 15

       B.     The Complaint Adequately Pleads that the Rojadirecta Domain Names
              Facilitated the Commission of Criminal Copyright Infringement . . . . . . . . . . 17

III.   THE COMPLAINT SETS FORTH A SUFFICIENT NEXUS TO THE
       UNITED STATES TO WARRANT APPLICATION OF U.S. COPYRIGHT
       LAWS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.    ASSUMING THE GOVERNMENT'S ALLEGATIONS ARE DEEMED
       DEFICIENT, THE GOVERNMENT SHOULD BE GRANTED LEAVE
       TO AMEND THE COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

The Government respectfully submits this memorandum of law in opposition to the motion by claimant Puerto 80 Projects, S.L.U. ("Puerto 80") to dismiss the Government's verified amended complaint (the "Complaint" or "Compl."), pursuant to Federal Rule of Civil Procedure 12(b)(6) and Rule G(8)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. For the reasons explained below, the motion should be denied.

## PRELIMINARY STATEMENT

On the basis of a series of evidentiary assertions that find minimal, if any, support in the yet undeveloped factual record, as well as a fundamental misunderstanding of the nature of the applicable laws of forfeiture, Puerto 80 now asks this Court to take the drastic step of dismissing the Government's Complaint without leave to amend. But this bold attempt by Puerto 80 to reclaim the domain names seized by the Government simply fails. Despite what Puerto 80 appears to believe, the Government has neither charged Puerto 80 with a crime, nor has it filed a civil lawsuit against that company. Instead, and as the Complaint makes absolutely clear, the Government has brought a civil action against certain property – an in rem proceeding against two domain names that facilitated the commission of criminal copyright infringement and are thus subject to forfeiture pursuant to Section 2323(a)(1) of Title 18, United States Code. Appropriately styled, the Complaint more than adequately states a claim for relief that is plausible on its face. Moreover, to the extent Puerto 80 would ask this Court to engage in the exercise of resolving disputed issues of fact, a motion to dismiss is not the appropriate mechanism for doing so, and Puerto 80's motion should thus be rejected in its entirety.

## STATEMENT OF FACTS[1]

This civil forfeiture action concerns two Internet domain names – rojadirecta.com and rojadirecta.org – seized by the U.S. Department of Homeland Security on or about February 1, 2011, pursuant to a warrant issued in the Southern District of New York by the Honorable Frank Maas, United States Magistrate Judge, who found probable cause to believe that these domain names were subject to forfeiture because they had been used to commit and facilitate criminal copyright infringement and because they contained evidence of that crime.  (Compl. ¶ 19).

A domain name is a simple, easy-to-remember way for humans to identify computers on the Internet.  (Declaration of Christopher D. Frey in Support of the Government's Opposition to Puerto 80's Motion to Dismiss ("Frey Decl."), Ex. A at ¶ 6a).  The Domain Name System ("DNS") is, among other things, a hierarchical convention for domain names.  Domain names are composed of one or more parts, or "labels," that are delimited by periods, such as "www.example.com."  The hierarchy of domains descends from right to left.  The right-most label conveys the "top-level" domain.  (Frey Decl., Ex. A at ¶ 6b).  DNS servers are computers connected to the Internet that convert domain names that are easy for humans to remember into Internet Protocol ("IP") addresses, which are unique machine-readable numeric addresses that computers use to identify each other on the Internet.  Every computer connection to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer is directed properly from its source to its destination.  DNS servers can be said to "resolve" or

---

[1]    This Statement of Facts is based upon the allegations in the Complaint, which was filed June 17, 2011 and verified by Special Agent Daniel M. Brazier of the U.S. Department of Homeland Security, Bureau of Immigration and Customs Enforcement, Homeland Security Investigations.

"translate" domain names into IP addresses.  (Id. at ¶ 6c).  For each top-level domain (such as ".com"), there is a single company, called a "registry," that determines which second-level domain resolves to which IP address.  The registry for the ".com" top-level domain is Verisign, Inc., located in Mountain View, California.  The registry for the ".org" top-level domain is The Public Interest Registry, located in Reston, Virginia.  (Id. at ¶ 6d).

If an individual or business wants to purchase a domain name, they buy it through a company called a "registrar."  The registrar, in turn, communicates this purchase to the relevant registry.  The individual or business who purchases, or registers, a domain name is called a "registrant."  (Id. at ¶ 6e).  Rojadirecta.com and rojadirecta.org (collectively, the "Rojadirecta Domain Names") are both registered with GoDaddy.com, Inc., a popular registrar, located in Scottsdale, Arizona.  (Id. at ¶ 3).

Prior to February 1, 2011, the Rojadirecta Domain Names directed Internet users to a website commonly known as "Rojadirecta."  (Compl. ¶ 14a).  Rojadirecta was a "linking" website that collected and catalogued links to files on third-party websites that contained illegal copies of copyrighted content, namely daily live sporting events and Pay-Per-View events, as well as downloadable sporting events or Pay-Per-View events that had been previously aired. (Id.).  Users of the Rojadirecta website could simply click on a particular link to begin the process of downloading or "streaming" to their own computer an illegal broadcast of a sporting event or Pay-Per-View event from the third-party website that hosted the stream.  Linking websites are extremely popular because they allow users to quickly browse content and locate illegal streams that would otherwise be more difficult to find through individual manual searches of the Internet.  (Compl. ¶ 12).

3

The holder of the copyrights to all television broadcasts and other footage of any given athletic event is the associated individual sports league. The U.S. Copyright Act, Title 17, United States Code, Sections 101, et seq., gives the holder of such copyrights various exclusive rights, including the right to control public performances and distribution of the works. In turn, the copyright holding sports leagues enter into contractual arrangements with television networks, which pay the leagues fees for the rights to broadcast telecasts of their copyrighted sporting events. (Compl. ¶ 7). At no time did the various copyright holding sports leagues authorize the third party distribution over the Internet of their respective sporting events by the Rojadirecta website, and the sports leagues have expended considerable resources providing notices requesting the removal of illegally posted content. (Compl. ¶¶ 9, 16, 18).

Prior to the February 1, 2011 seizure, Rojadirecta's homepage displayed three general categories of links to content available for viewing: (1) "Today on Internet TV"; (2) "Download last full matches"; and (3) "Last video highlights." (Compl. ¶ 14a; Ex. A). Links for daily sporting events were displayed under the "Today on Internet TV" category header. The links under the "Today on Internet TV" category header changed on a daily basis; links were added as the day progressed and an event's start time drew closer. The sporting events and their starting times corresponded to individual sporting leagues' official events and starting times. (Compl. ¶ 14b).

When a user selected a link for a particular sporting event under the "Today on Internet TV" category header, the type of link, the name of the broadcasting station (e.g., ESPN), the language option, and the type of Internet media player were subsequently displayed. Once a user selected a specific link option, that user was then taken to a new window, which displayed the

selected program and bore a Uniform Resource Locator, or "URL,"[2] containing the words

"rojadirecta." Because the content ran on a live stream from another website, the selected show

did not start at the beginning of the program; instead, the program ran from whatever particular

point the show was presently at in the stream.   Moreover, the event broadcast was shown in real

time and was the same broadcast as the authorized broadcast of that same event.  However, these

broadcasts over the Rojadirecta website were not authorized by the relevant copyright holders.  In

addition, advertisements that were separate and distinct from any commercials that may have

been aired during the stream of the sporting event broadcast were periodically displayed at the

bottom of the video during the live stream.  (Compl. ¶ 14c).

      Since shortly after the February 1, 2011 seizure, the Rojadirecta website has been

available to Internet users via the domain names rojadirecta.es and rojadirecta.me, among others.

(Compl. ¶ 20).

## PROCEDURAL HISTORY

      On June 17, 2011, the United States commenced this in rem civil action by filing the

Complaint, seeking forfeiture of the Rojadirecta Domain Names pursuant to Title 18, United

States Code, Sections 2323(a)(1)(A)-(B), as properties used or intended to be used to willfully

---

    [2]    A URL, which is often colloquially referred to as a "link," is code that specifies a
particular webpage or file on the Internet.  For example, "http://movies.nytimes.com" is the URL
for the webpage containing the New York Times' reviews of various movies.

5

infringe a copyright in violation of Title 18, United States Code, Section 2319.[3]  On August 5,

2011, claimant Puerto 80 filed its motion to dismiss the Complaint.

## ARGUMENT

## I.      LEGAL STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6), a complaint will be dismissed if it "fail[s] to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In two fairly recent decisions, the United

States Supreme Court revisited the pleading requirements necessary to survive a motion to

dismiss under Rules 8 and 12(b)(6).  See Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009); Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007).  Generally speaking, a Rule 12(b)(6) motion to dismiss

should be granted only if the complaint does not "contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting

Twombly, 550 U.S. at 570); see also id. at 1953 ("Our decision in Twombly expounded the

pleading standard for 'all civil actions' . . .") (quoting Fed. R. Civ. P. 1).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Id. at 1949; accord Twombly,

550 U.S. at 556.  "Factual allegations must be enough to raise a right to relief above the

---

[3]      The Complaint further references a violation of Title 18, United States Code, Section 2319B as a basis for this forfeiture action.  (See Compl. ¶ 24) ("The Defendant Domain Names are subject to forfeiture pursuant to Title 18, United States Code, Sections 2323(a)(1)(A)-(B) because there is probable cause to believe that they constitute property used or intended to be used to wilfully infringe a copyright in violation of 18 U.S.C. § 2319 and/or unlawfully transmit copyrighted sporting event telecasts in violation of 18 U.S.C. § 2319B").  The Government's inclusion of a reference to Section 2319B of Title 18 in the Complaint was in error, and the Government does not seek to base its claim for forfeiture on that portion of the Code.

speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555.

In a civil forfeiture action, the complaint must comply with the pleading requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.[4] Rule G(2) requires, among other things, that the complaint "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Rule G(2)(f). Thus, the standard to be applied to a civil forfeiture complaint is more stringent than the notice pleading requirements of the Federal Rules of Civil Procedure. See, e.g., United States v. Daccarett, 6 F.3d 37, 47 (2d Cir. 1993).

The Government is not, however, required to have sufficient evidence at the time it files its complaint to establish the forfeitability of property. The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 106 Pub. L. No. 185, 114 Stat. 202 (2000), codified in part at 18 U.S.C. § 983, makes clear that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D); see also Rule G(8)(b)(ii) ("In an action governed by 18 U.S.C. § 983(a)(3)(D) the complaint may not be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property. The sufficiency of the complaint is governed by Rule G(2)."); 18 U.S.C. § 983(c)(2) ("[T]he Government may use evidence gathered after the filing of a complaint for

---

[4]   Supplemental Rule G, which became effective December 1, 2006, provides that, "[t]o the extent that [Rule G] does not address an issue, Supplemental Rules C and E and the Federal Rules of Civil Procedure also apply." Rule G(1).

forfeiture to establish, by a preponderance of the evidence, that property is subject to

forfeiture.").

    Nor is the Government required to show probable cause for forfeiture. See, e.g.,

Daccarett, 6 F.3d at 47. Instead, the complaint simply needs to establish a "reasonable belief"

that the government will be able to meet its burden at trial. Id. "In other words, the complaint

need not allege facts sufficient to show that specific property is tainted, but facts sufficient to

support a reasonable belief that the government can demonstrate" the ultimate trial burden "for

finding the property tainted." Id. Stated differently, the Government must plead "the

circumstances from which the claim arises with such particularity that the defendant or claimant

will be able, without moving for a more definite statement, to commence an investigation of the

facts and to frame a responsive pleading." United States v. Mondragon, 313 F.3d 862, 865-67

(4th Cir. 2002) (quoting Supplemental Rule E(2)(a)).[5]

    When considering a Rule 12(b)(6) motion to dismiss, the court "must accept as true all of

the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in

the light most favorable to plaintiff, and construe the complaint liberally." Roth v. Jennings, 489

F.3d 499, 510 (2d Cir. 2007) (quoting Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)). The

trial court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight

of the evidence which might be offered in support thereof." Levitt v. Bear Stearns & Co., 340

---

    [5]    Prior to the adoption of Rule G, courts applied the pleading standard in Supplemental Rule E(2)(a) – which governs maritime and admiralty actions – to civil forfeiture actions. The Advisory Committee Notes to Rule G state that "application of this standard to civil forfeiture actions has evolved to the standard stated in [Rule G(2)(f)]." Citing Mondragon, the Advisory Committee Notes state that Rule G(2)(f) "carries this forfeiture case law forward without change."

F.3d 94, 101 (2d Cir. 2003) (internal quotation marks and citations omitted); see also United States v. $15,270,885.69 Formerly on Deposit in Account No. 8900261137, No. 99 Civ. 10255 (RCC), 2000 WL 1234593, at *5 (S.D.N.Y. Aug. 31, 2000) (motion to dismiss may not be used to test the sufficiency or admissibility of the evidence). "[T]he issue is not whether a plaintiff will ultimately prevail but whether [it] is entitled to offer evidence to support the claims." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks and citations omitted). In making that determination, matters outside the complaint, such as the claimants' factual contentions, are not considered. See United States v. All Funds on Deposit at Citigroup Smith Barney Account No. 600-00338, No. 06-CV-3730 (NGG), 2008 WL 3049895, at *5 (E.D.N.Y. Aug. 1, 2008) ("On a motion to dismiss, the district court's consideration is 'limited to the factual allegations in [the] amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff [ ] had knowledge and relied on in bringing suit.'") (quoting Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)) (alterations in original); United States v. All Funds on Deposit in, or Transferred to or Through, Banc of America Account No. 207-00426, No. CV-05-3971 (SJF), 2007 WL 2114670, at *3 (E.D.N.Y. July 16, 2007).

## II.   THE COMPLAINT ADEQUATELY PLEADS THAT THE ROJADIRECTA DOMAIN NAMES WERE USED TO COMMIT OR FACILITATE THE COMMISSION OF CRIMINAL COPYRIGHT INFRINGEMENT

As set forth clearly in its Complaint, the Government seeks forfeiture of the Rojadirecta Domain Names pursuant to Title 18, United States Code, Sections 2323(a)(1)(A)-(B). Section

2323(a)(1) of Title 18, United States Code, provides, in relevant part, that:

> The following property, is subject to forfeiture to the United States Government:
>     (A) Any article, the making or trafficking of which is, prohibited under section 506 of Title 17, or section 2318, 2319, 2319A, 2319B, or 2320, or chapter 90, of this title.
>     (B) Any property used, or intended to be used, in any manner or part to commit or facilitate the commission of an offense referred to in subparagraph (A).

18 U.S.C. § 2323(a)(1)(A)-(B).  As discussed in further detail below, the Government has adequately pled that the Rojadirecta Domain Names are subject to forfeiture because they constitute "property used, or intended to be used, in any manner or part to commit <u>or facilitate the commission of</u> an offense referred to" in Section 2323(a)(1)(A) of Title 18, namely criminal infringement of a copyright in violation of Title 17, United States Code, Section 506 and Title 18, United States Code, Section 2319.  18 U.S.C. § 2323(a)(1)(B) (emphasis added).  Indeed, Puerto 80's argument that neither conspiracy nor aiding and abetting liability are supported by the forfeiture statute under which the Government brings its Complaint demonstrates a fundamental misunderstanding of the forfeiture laws.  (<u>See</u> Puerto 80 Br. at 11-12).

### A.   The Complaint Adequately Pleads the Commission of Criminal Copyright Infringement

Title 18, United States Code, Section 2319 sets forth certain criminal penalties associated with the criminal infringement of a valid copyright, in violation of Title 17, United States Code, Section 506(a).  Criminal infringement of a copyrighted work is established by proving each of the following elements: (1) the existence of a valid copyright; (2) an act of infringement of that copyright; (3) willfulness on the part of the infringer; and (4) either that (a) the infringement was for purposes of commercial advantage or private financial gain, or (b) the infringer reproduced or

distributed, during any 180-day period, one or more copies or phonorecords of one or more copyrighted works, with a total retail value of more than $1,000.  17 U.S.C. § 506(a); Sand, et al., Modern Federal Jury Instructions, Instr. 54A-9 (2011).  Accepting all of the factual allegations of the Complaint as true and drawing inferences from those allegations in the light most favorable to the Government – as this Court must do under the law – Puerto 80's motion to dismiss should be denied.

1.     The Complaint Adequately Pleads the Existence of a Valid Copyright

As set forth in the Complaint, the owner of the copyrights to all television broadcasts and other footage of a particular sporting event is the associated individual sports league, such as the National Football League (the "NFL"), the National Basketball Association (the "NBA"), the National Hockey League (the "NHL"), World Wrestling Entertainment (the "WWE") and Ultimate Fighting Championship (the "UFC").  (Compl. ¶ 7).  In addition, the U.S. Copyright Act, Title 17, United States Code, Sections 101, et seq., gives the owner of such copyrights exclusive rights, including the right to reproduce the copyrighted work, the right to prepare derivative works, the right to distribute copies to the public, and the right to publicly display the work.  17 U.S.C. §§ 106(1)-(3) & (5).  (Id.).  As such, the sports leagues hold valid copyrights to the broadcast of their respective sporting events.

2.     The Complaint Adequately Pleads Infringing Acts

Infringement consists of the unauthorized exercise of one of the exclusive rights of the copyright holder such as the right to reproduce copyrighted work or the right to distribute copies to the public.  See 17 U.S.C. . §§ 106(1) &(3); Island Software and Computer Service, Inc. v. Microsoft Corp., 413 F.3d 257, 260 (2d Cir. 2005) (stating the proposition that infringement

11

occurs when one violates one of the exclusive rights that Title 17, United States Code, Section 106 bestows upon the copyright holder); United States v. Cohen, 946 F.2d 430, 433 (6th Cir. 1991) ("Copyright law reserves the rights of reproduction and distribution to the copyright holder"). As set forth in the Complaint, prior to their seizure, the Rojadirecta Domain Names resolved to a "linking" website.[6]  (Compl. ¶ 11).  Linking websites collect and catalog links – a code that specifies a particular webpage or file on the Internet – to files on third-party websites. (Compl. ¶ 12).  By clicking on a particular link, an Internet user begins the process of downloading or streaming to their own computer certain material.  (Id.).

The Rojadirecta Domain Names clearly facilitated acts of distribution that constitute copyright infringement.  The Rojadirecta website's homepage, which was accessible via the Rojadirecta Domain Names, displayed three general categories of links to content available for viewing prior to the February 1, 2011 seizure: (1) "Today on Internet TV"; (2) "Download last full matches"; and (3) "Last video highlights."  (Compl. ¶ 14a; Ex. A).  Links for daily sporting events were displayed under the "Today on Internet TV" category header.  The links under the "Today on Internet TV" category header changed on a daily basis; links were added as the day progressed and an event's starting time drew closer.[7]  The sporting events and their starting times

---

[6]    A linking website is distinct from a "cyberlocker" website, which allows users to upload content and often features high-capacity data connections that allow users to download or stream that content relatively quickly and conveniently.  (Compl. ¶ 11 n.1).

[7]    In this way, the cases that Puerto 80 cites in arguing that merely linking to material available elsewhere on the Internet is not copyright infringement are distinguishable.  (See Puerto 80 Br. at 7-8).  In those cases, the courts' findings were largely predicated on the lack of active or volitional conduct by the alleged infringing entity.  For example, in Perfect 10, Inc. v. Amazon.com, Inc., 487 F.3d 701 (9th Cir. 2007), a case cited by Puerto 80, the court described the Google search engine as "a software program that automatically accesses thousands of websites . . . and indexes them within a database store on Google's computers.  When a Google

corresponded to individual sporting leagues' official events and starting times.  (Compl. ¶ 14b).

When a user selected a link for a particular sporting event under the "Today on Internet

TV" category header, the type of link, the name of the broadcasting station (e.g., ESPN), the

language option, and the type of Internet media player were subsequently displayed.  Once a user

selected a specific link option, that user was then taken to a new window, which displayed the

selected program and bore a Uniform Resource Locator, or "URL," containing the words

"rojadirecta."  Because the content ran on a live stream from another website, the selected show

did not start at the beginning of the program; instead, the program ran from whatever particular

point the show was presently at in the stream.   Moreover, the event broadcast was shown in real

time and was the same broadcast as the authorized broadcast of that same event.  (Compl. ¶

14c).

Between approximately December 12, 2010 and January 5, 2011, agents with the U.S.

Department of Homeland Security, Immigration and Customs Enforcement accessed the

Rojadirecta website via the Rojadirecta Domain Names and thereafter clicked on various links

present on that website for specific sporting events.  In so doing, these agents were able to view

streams of copyright protected sporting event telecasts, including broadcasts of NFL, NBA, and

NHL games.  (Compl. ¶ 15, 17).   However, the distribution of these streaming broadcasts were

not authorized by the relevant copyright holding sports leagues.  (Compl. ¶¶ 16, 18).  As such,

---

user accesses the Google website and types in a search query, Google's software searches its
database for websites responsive to that search query . . . [and] sends relevant information . . . to
the user's computer." 487 F.3d at 711 (emphasis added).  The owner of the Rojadirecta Domain
Names, by contrast and unlike the Google search engine, purposefully aggregated extremely
specific content and actively organized that material in a focused, logical manner (for example,
by day and time) on the Rojadirecta website.

those acts of distribution – acts the Rojadirecta Domain Names facilitated – constituted

infringement of valid copyrights.

        3.      The Complaint Adequately Pleads Willful Infringement

       The Government has adequately plead willfulness in its Complaint as well.  Puerto 80

itself acknowledges that although the Second Circuit Court of Appeals held in 1943 that willful

intent in the criminal copyright context need only be shown as to the intent to copy the works,

and not as to the intent to infringe the copyright, see United States v. Backer, 134 F.2d 533, 535

(2d Cir. 1943), recent decisions of the Second Circuit have articulated that "[t]he standard is

simply whether the defendant had knowledge that its conduct represented infringement or

perhaps recklessly disregarded the possibility." Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.,

996 F.2d 1366, 1382 (2d Cir. 1993).  (See Puerto 80 Br. at 13 n.4).

       Aware of the pervasiveness of internet piracy, the sports leagues who hold the copyrights

to the broadcasts of their sporting events have expended considerable resources providing notices

that request the removal of illegally posted content to the owners and operators of websites where

such content can be found.  (Compl. ¶¶ 9, 16, 18).[8]  Despite these notices, which serve to advise

of alleged infringing activity, the Rojadirecta webpage provided and systematically organized

links to copyrighted athletic events up to the date of the seizure of the Rojadirecta Domain

Names. (Compl. ¶¶ 15, 17).  Courts in this district have held such explicit forms of notice to be

sufficient evidence to support a finding that the defendant knew its conduct represented

---

      [8]     Admittedly, the Complaint does not explicitly state that such notices were
provided to the registered owner of the Rojadirecta Domain Names.  While that is a fair inference
to be drawn from the totality of the Complaint's allegations, it may be preferable to amend the
Complaint to so state, and the Government would request leave to do so.

infringement or at least recklessly disregarded that possibility.  See, e.g., Getaped.com, Inc. v. Cangemi, 188 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2002) (holding that evidence that plaintiff's website had a prominent copyright notice supported a finding that defendants' acted in reckless disregard of plaintiff's rights); Castle Rock Entertainment v. Carol Pub. Group, Inc., 955 F. Supp. 260, 267 (S.D.N.Y. 1997) (holding that fact that plaintiff's copyrighted works had copyright notices weighed in determining willfulness of defendant's infringement).  Thus, the Government's Complaint adequately pleads wilful infringement.[9]

> 4.  The Complaint Adequately Pleads Private Financial Gain, or the Distribution of Copies of Copyrighted Works

Finally, the Government's complaint adequately pleads the fourth element of criminal copyright infringement, namely that the infringement was for purposes of commercial advantage or private financial gain, or the infringer reproduced or distributed, during any 180-day period, one or more copies or phonorecords of one or more copyrighted works, with a total retail value of more than $1,000.

With respect to private financial gain, the Complaint makes clear that when an Internet user selected an individual link to a particular sporting event from the Rojadirecta website and

---

[9]      Puerto 80's attempts to resolve this disputed issue on a not yet fully developed factual record by arguing that willfulness is negated by the fact that two courts in Spain have declared Puerto 80's operation of the Rojadirecta website legal should be rejected.  (See Puerto 80 Br. at 14-15).  The ultimate issue of willfulness simply cannot be decided at this stage of the proceeding, and it is entirely inappropriate, in asking this Court to take judicial notice of those decisions, to suggest that this Court should rule conclusively on that disputed element at this time.  See e.g., Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) ("[A]lthough the final determination of [certain] testimony may be public records of which a court may take judicial notice, 'it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion.'") (citing Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004)).

the corresponding stream of the telecast began to run, advertisements that were separate and distinct from any commercials that may have been aired during the stream of the sporting event broadcast were periodically displayed at the bottom of the video during the live stream.  (Compl. ¶ 14c).  On a motion to dismiss, this Court is required to draw all inferences from the allegations of a complaint in the light most favorable to the plaintiff.  Roth, 489 F.3d at 510.  It is certainly a permissible inference for this Court to draw that these advertisements generate revenue and result in private financial gain.

Moreover, the law is clear that Title 17, United States Code, Section 506(a) "does not require that a defendant actually realize a commercial advantage or private financial gain.  It is only necessary that the activity be for the purpose of financial gain or benefit."  United States v. Cross, 816 F.2d 297, 301 (7th Cir. 1987) (citing United States v. Moore, 604 F.2d 1228, 1235 (9th Cir. 1979)).  In addition, courts have held that "[f]inancial benefit exists where the availability of infringing material 'acts as a "draw" for customers.'"  A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1023 (9th Cir. 2001) (citing Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 263-64 (9th Cir. 1996)).  Again, this Court may infer that websites such as Rojadirecta (as well as those to which it links) benefit financially from making copyright protected works available on the Internet.

The fourth required element of criminal copyright infringement may also be satisfied by establishing that an infringer reproduced or distributed, during any 180-day period, one or more copies of one or more copyrighted works.  The Complaint's allegations are sufficient in this regard as well.  As already discussed above, between approximately December 12, 2010 and January 5, 2011, law enforcement agents accessing the Rojadirecta website via the Rojadirecta

Domain Names were able to view streams of copyright protected sporting event telecasts, including broadcasts of NFL, NBA, and NHL games, none of which were authorized by the relevant copyright holders. (Compl. ¶¶ 15-18).   And the Court may reasonably infer that the retail value of these pirated broadcasts exceeded $1,000, given the contractual arrangements the copyright holders enter into television networks in exchange for fees for the rights to broadcast telecasts of those events, the value of advertising revenue generated by such broadcast partners, and the significant investments the sports leagues make to monitor rampant acts of piracy. (Compl. ¶¶ 7-9).

**B.   The Complaint Adequately Pleads that the Rojadirecta Domain Names Facilitated the Commission of Criminal Copyright Infringement**

Puerto 80's contention that neither conspiracy nor aiding and abetting liability are supported by the forfeiture statute under which the Government brings the Complaint, (see Puerto 80 Br. at 11-12), is simply of no import here and demonstrates a fundamental misunderstanding of forfeiture law.   The very text of Section 2323(a)(1)(B) of Title 18, United States Code – the precise statute on which the Government's forfeiture claim is based – makes clear that "any property used . . . in any manner or part to commit or facilitate the commission of an offense [such as criminal copyright infringement]" is subject to forfeiture.   18 U.S.C. § 2323(a)(1)(B).   Moreover, it is "[i]rrelevant whether the property's role in the crime is integral, essential or indispensable," United States v. Schifferli, 895 F.2d 987, 990 (4th Cir. 1990), and a single incident of facilitating criminal activity is sufficient to trigger forfeiture.   United States v. Santoro, 866 F.2d 1538, 1542 (4th Cir. 1989).

17

Contrary to Puerto 80's assertions, the Government is not criminally charging Puerto 80 or the operator of the Rojadirecta website with "indirect copyright infringement." (Puerto 80 Br. at 11-12). Nor does it matter that Section 2323 does not authorize forfeiture based on violations of Title 18, United States Code, Sections 2 or 371. The Government is not bringing a civil action against Puerto 80. Instead, the Government's Complaint initiated an in rem civil action against certain property, here, the Rojadirecta Domain Names, and alleges that those domain names themselves facilitated the commission of a recognized crime. Viewed properly, the Complaint's allegations state a plausible claim that, at a minimum, the Rojadirecta Domain Names facilitated the commission of criminal copyright infringement by providing access to a website that organized popular, infringing content available elsewhere on the Internet in a way that is useful to those who seek such material. Indeed, this Court has already held that "[t]he main purpose of the Rojadirecta websites . . . is to catalog links to the copyrighted athletic events" and "any argument to the contrary is clearly disingenuous." See Order at 4, Puerto 80 Projects, S.L.U. v. United States, No. 11-cv-3983 (PAC) (S.D.N.Y. Aug. 4, 2011). Moreover, the Rojadirecta Domain Names' facilitation of a criminal copyright violation has resulted in real harm. Online piracy of live sporting event telecasts threatens the investment that broadcasters and digital media companies are willing to make to distribute live content, the sporting leagues' ability to sell game tickets and secure local television and radio carriage, and the value of advertising revenue generated by broadcast, radio and new media partners. (Compl. ¶ 8).

For all of these reasons, the Complaint adequately pleads that the Rojadirecta Domain Names were used to commit or facilitate the commission of criminal copyright infringement, and Puerto 80's motion to dismiss should be denied.

## III.    THE COMPLAINT SETS FORTH A SUFFICIENT NEXUS TO THE UNITED STATES TO WARRANT APPLICATION OF U.S. COPYRIGHT LAWS

In further support of its motion to dismiss, Puerto 80 cites to the legal principle that U.S. copyright laws generally do not have extraterritorial application, and argues that no act of infringement by Puerto 80 has taken place in the United States.  (See Puerto 80 Br. at 15-16).  In this regard, Puerto 80 submits that Rojadirecta is a Spanish website whose content is stored on computer servers residing in Canada.  (Id. at 16).  Puerto 80 neglects to mention, however, that the Rojadirecta Domain Names – rojadirecta.com and rojadirecta.org – are both registered with GoDaddy.com, Inc., a registrar located in Scottsdale, Arizona.[10]  (Frey Decl., Ex. A at ¶ 3).  Indeed, the United States controls both the .com and .org top-level domains.  By registering the Rojadirecta Domain Names with a Scottsdale, Arizona company and availing itself of the benefits attendant to the popular and widely recognized .com and .org top-level domains, Puerto 80's facilitation of criminal copyright infringement is sufficiently connected to the United States to render it actionable under federal copyright laws.  See, e.g., GB Marketing USA Inc. v. Gerolsteiner Brunnen GmbH & Co., 782 F. Supp. 763, 773 (W.D.N.Y. 1991) (holding that U.S. copyright law applied where a German company allegedly infringed an American distributor's copyright by manufacturing bottled water containing the copyrighted design in Germany, and shipping it through an agent into the United States because the German company had facilitated an act of infringement that occurred in the United States).

---

[10]    Moreover, the registry for the ".com" top-level domain is VeriSign, Inc., located in Mountain View, California, and the registry for the ".org" top-level domain is The Public Interest Registry, located in Reston, Virginia.  (Frey Decl., Ex. A at ¶ 6d).

In addition, as the Complaint recites, the Rojadirecta website made streams of copyrighted broadcasts of sporting events available to viewers in the United States. (See, e.g., Compl. ¶ 13 ("During the course of the investigation, agents accessed and monitored the websites accessible via the [Rojadirecta] Domain Names using computers located in the borough of Manhattan . . . and used those websites to stream portions of copyrighted broadcasts of sporting events . . . .")). In so doing, the Rojadirecta website distributed copyrighted material illegally to users in the United States in a manner similar to that which courts have found U.S. copyright law to apply. See, e.g., Litecubes, LLC v. Northern Light Products, Inc., 523 F.3d 1353 (Fed. Cir. 2008) (holding that Copyright Act does not reach conduct occurring entirely abroad, but may reach infringing conduct occurring partially in the United States such as marketing and sale of product to U.S. customers).

Thus, the instant case is simply not one in which the infringing conduct occurs entirely abroad, and merely produces harmful effects within the United States. On this basis too then, Puerto 80's motion should be denied.

## IV. ASSUMING THE GOVERNMENT'S ALLEGATIONS ARE DEEMED DEFICIENT, THE GOVERNMENT SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT

As discussed above, the Complaint more than adequately meets the standard articulated by the Supreme Court in Twombly and Iqbal, but even if this Court were to find that it does not, the Government should be afforded leave to amend its Complaint. See Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); see also McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (reiterating that whether to permit a plaintiff to amend his pleadings is a matter committed to the court's sound discretion); Cortec Indus., Inc.

v. <u>Sun Holding, L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991) (finding that "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.").  Indeed, under Second Circuit precedent, "plaintiffs are regularly and properly given at least one chance to amend their complaint in response to a district court's finding of inadequacy." <u>Brown</u> v. <u>City of Oneonta</u>, 235 F.3d 769, 784 (2d Cir. 2000) (citing <u>Branum</u> v. <u>Clark,</u> 927 F.2d 698, 705 (2d Cir. 1991) (court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claims might be stated)).

21

## CONCLUSION

For the foregoing reasons, Puerto 80's motion to dismiss should be denied in its entirety.

In the alternative, and in the event the Court finds that the Government has not sufficiently plead

its claims, the Court should grant the Government leave to amend its Complaint.

Dated: New York, New York
       August 26, 2011

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney for the
                              Southern District of New York

                    By:       /s/ Christopher D. Frey
                              Christopher D. Frey
                              David I. Miller
                              Assistant United States Attorneys
                              One Saint Andrew's Plaza
                              New York, New York 10007
                              Tel.: (212) 637-2270/2484
                              Fax: (212) 637-2620