**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>   v.<br><br>THE FOLLOWING DOMAIN NAMES:<br><br>ROJADIRECTA.ORG, and<br>ROJADIRECTA.COM,<br><br>               Defendants *in rem*. | Civil Action No. 1:11-cv-04139-PAC<br><br>**MEMORANDUM OF LAW IN SUPPORT OF CLAIMANT PUERTO 80 PROJECTS, S.L.U.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  FACTUAL ALLEGATIONS AND ADMISSIONS ............................................2

III.  ARGUMENT .......................................................................................................4

    A.  The Government Has Not Alleged Criminal Copyright Infringement. ...................4

        1.  "Aggregating links" is not direct copyright infringement. .........................4

        2.  Even assuming linking could give rise to secondary liability, the government has not alleged indirect infringement.....................................7

        3.  A reading of "facilitation" broad enough to encompass Puerto 80's conduct would violate the First Amendment. ..............................................9

        4.  The government fails to allege willfulness. ...............................................12

            a.  The government's amended allegations of willfulness are insufficient to plead criminal intent. ................................................12

            b.  The rule of lenity precludes a finding of criminal infringement. .........................................................................................15

    B.  The Seizure Violates The First Amendment.........................................................17

    C.  Copyright Laws Do Not Apply Extraterritorially. ................................................20

IV.  IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER DENYING PUERTO 80'S MOTION TO DISMISS .......................................22

V.  CONCLUSION...................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arista Records, Inc. v. MP3Board, Inc.*,
No. 00 CIV. 4660(SHS), 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002) ............................ 5, 6

*Ascentive LLC v. Opinion Corp.*,
No. 10-cv-4433(ILG)(SMG), 2011 WL 6181452 (E.D.N.Y. Dec. 13, 2011) ........................ 7

*Astro Cinema Corp. Inc. v. Mackell*,
422 F.2d 293 (2d Cir. 1970)..................................................................................... 11

*Auburn Hous. Auth. v. Martinez*,
277 F.3d 138 (2d Cir. 2002)..................................................................................... 13

*Bernstein v. JC Penney, Inc.*,
No. 98-2958 R EX, 1998 WL 906644 (C.D. Cal. Sept. 29, 1998) .......................... 5

*Cheek v. United States*,
498 U.S. 1992 (1991)................................................................................................. 12

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
657 F.3d 936 (9th Cir. 2011) ................................................................................... 19

*Corbis Corp. v. Amazon.com, Inc.*,
351 F. Supp. 2d 1090 (W.D. Wash. 2004)................................................................. 14

*CoStar Group, Inc. v. LoopNet, Inc.*,
373 F.3d 544 (4th Cir. 2004) ..................................................................................... 4

*Craig v. Boren*,
429 U.S. 190 (1976)..................................................................................................... 18

*Cyberspace Communications, Inc. v. Engler*,
55 F. Supp. 2d 737 (E.D. Mich. 1999)..................................................................... 7

*Deegan v. City of Ithaca*,
444 F.3d 135 (2d Cir. 2006).............................................................................. 18, 19

*Demetriades v. Kaufmann*,
690 F. Supp. 289 (S.D.N.Y. 1988)........................................................................... 9

*Dowling v. United States*,
473 U.S. 207 (1985)..................................................................................................... 15

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*,
485 U.S. 568 (1988)..................................................................................................... 11

*Elmo Shropshire v. Canning*,
No. 10-cv-01941-LHK, 2011 WL 90136 (N.D. Cal. Jan. 11, 2011) ........................ 21

*Elsevier Ltd. v. Chitika, Inc.*,
 No. Civ. 11-10026-RGS, 2011 WL 6008975 (D. Mass. Dec. 2, 2011)........................... 20, 21

*Fort Wayne Books, Inc. v. Indiana*,
 489 U.S. 46 (1989)................................................................................................... 10, 11

*G-I Holdings, Inc. v. Baron & Budd*,
 179 F. Supp. 2d 233 (S.D.N.Y. 2001)................................................................................. 8

*In re Napster, Inc. Copyright Litig.*,
 377 F. Supp. 2d 796 (N.D. Cal. 2005) ............................................................................ 5, 6

*James v. United States*,
 366 U.S. 213 (1961)......................................................................................................... 15

*Kelly v. L.L. Cool J.*,
 145 F.R.D. 32 (S.D.N.Y. 1992),
 *aff'd*, 23 F.3d 398 (2d Cir. 1994) ..................................................................................... 17

*Liparota v. United States*,
 471 U.S. 419 (1985)..................................................................................................... 8, 15

*Million Youth March, Inc. v. Safir*,
 18 F. Supp. 2d 334 (S.D.N.Y. 1998)................................................................................ 19

*Omega S.A. v. Costco Wholesale Corp.*,
 541 F.3d 982 (9th Cir. 2008),
 *aff'd by an equally divided court*, 131 S. Ct. 565 (2010)...................................................... 20

*Online Policy Group v. Diebold, Inc.*,
 337 F. Supp. 2d 1195 (N.D. Cal. 2004) ............................................................................. 4

*Palmer v. Braun*,
 376 F.3d 1254 (11th Cir. 2004) ................................................................................. 20, 21

*Pennell v. City of San Jose*,
 485 U.S. 1 (1988).............................................................................................................. 18

*Perfect 10, Inc. v. Amazon.com, Inc.*,
 487 F.3d 701 (9th Cir. 2007) ...................................................................................... 4, 21

*Red Lion Broad. Co. v. FCC*,
 395 U.S. 367 (1969).......................................................................................................... 17

*Rescuecom Corp. v. Google Inc.*,
 562 F.3d 123 (2d Cir. 2009)............................................................................................... 7

*Robert Stigwood Grp. Ltd. v. O'Reilly*,
 530 F.2d 1096 (2d Cir. 1976)........................................................................................... 20

*Roberts v. Keith*,
 No. 04-cv-10079(LAP), 2009 WL 3572962 (S.D.N.Y. Oct. 23, 2009) ....................... 20, 21

iii

*Saks v. Franklin Covey Co.*,
    316 F.3d 337 (2d Cir. 2003) ................................................................. 13

*Screws v. United States*,
    325 U.S. 91 (1945) ............................................................................... 12

*Sec'y of State v. Joseph H. Munson Co.*,
    467 U.S. 947 (1984) ............................................................................. 18

*Sony Corp. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ............................................................................... 9

*Strong & Fisher Ltd. v. Maxima Leather, Inc.*,
    No. 92 Civ. 1779 (JSM), 1993 WL 277205 (S.D.N.Y. Jul. 22, 1993) ................... 8

*Ticketmaster Corp. v. Tickets.com, Inc.*,
    54 U.S.P.Q.2d 1344 (C.D. Cal. 2000) ...................................................... 5

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010) .................................................................. 14

*Turner Broad. Sys., Inc. v. FCC*,
    512 U.S. 622 (1994) ....................................................................... 18, 19

*UMG Recordings, Inc. v. Shelter Capital Partners*,
    Nos. 09-55902, 09-56777, 10-55732,
    2011 WL 6357788 (9th Cir. Dec. 20, 2011) ........................................ 13, 14, 15

*United States v. 3234 Washington Ave.*,
    480 F.3d 841 (8th Cir. 2007) ................................................................. 9

*United States v. Acevedo-Cruz*,
    No. CRIM.04-0381-DRD, 2006 WL 448680 (D.P.R. Feb. 23, 2006),
    *aff'd*, 503 F.3d 1 (1st Cir. 2007) ......................................................... 12

*United States v. Baer*,
    662 F. Supp. 126 (W.D.N.Y. 1987) ........................................................ 16

*United States v. Cohen*,
    260 F.3d 68 (2d Cir. 2001) ................................................................... 7

*United States v. Critzer*,
    498 F.2d 1160 (4th Cir. 1974) .............................................................. 16

*United States v. Heilman*,
    614 F.2d 1133 (7th Cir. 1980) .............................................................. 12

*United States v. Lanier*,
    520 U.S. 259 (1997) ............................................................................. 8

*United States v. MacKenzie*,
    777 F.2d 811 (2d Cir. 1985) ................................................................. 16

*United States v. Moran*,
    757 F. Supp. 1046 (D. Neb. 1991) ............................................................ 12

*United States v. O'Brien*,
    391 U.S. 367 (1968) ................................................................................. 18

*United States v. Osorio Estrada*,
    751 F.2d 128 (2d Cir. 1984) ....................................................................... 7

*United States v. Quattrone*,
    402 F.3d 304 (2d Cir. 2005) ..................................................................... 10

*United States v. Rose*,
    149 U.S.P.Q. 820 (S.D.N.Y. 1966) ........................................................... 12

*United States v. Salameh*,
    992 F.2d 445 (2d Cir. 1993) ..................................................................... 11

*United States v. Wise*,
    550 F.2d 1180 (9th Cir. 1977) ................................................................. 12

*Update Art, Inc. v. Modiin Publ'g, Ltd.*,
    843 F.2d 67 (2d Cir. 1988) ....................................................................... 20

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) ................................................................................. 17

*Vance v. Universal Amusement Co.*,
    445 U.S. 308 (1980) ................................................................................. 11

*Viacom International Inc. v. YouTube, Inc.*,
    718 F. Supp. 2d 514 (S.D.N.Y. 2010) ...................................................... 14

*Virginia v. Am. Booksellers Assoc.*,
    484 U.S. 383 (1988) ................................................................................. 18

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ................................................................................. 19

## **Statutes**

17 U.S.C. § 106(3) ........................................................................................... 4

17 U.S.C. § 506(a) ..................................................................................... 4, 12

17 U.S.C. § 512 ........................................................................................ 13, 14

17 U.S.C. § 512(c) .......................................................................................... 13

17 U.S.C. § 512(h) .......................................................................................... 19

18 U.S.C. § 2 ................................................................................................... 9

18 U.S.C. § 371 ............................................................................................... 9

18 U.S.C. § 983(c) ........................................................................................... 11

18 U.S.C. § 2323 ............................................................................................... 9

28 U.S.C. § 1292(b) ..................................................................................... 1, 22

**<u>Other Authorities</u>**

4-15 David Nimmer, *Nimmer on Copyright* § 15.01 (2004) ......................................... 8

Paul Goldstein, *Goldstein on Copyright* § 13.3 (2005) ................................................. 8

Claimant Puerto 80 Projects, S.L.U. ("Puerto 80") respectfully submits this motion to dismiss the First Amended Complaint ("FAC") filed in this action.

## I.    INTRODUCTION

The First Amended Complaint, ECF No. 35, clarifies the government's theory of forfeiture, and reveals the government's erroneous understanding of the elements of copyright infringement.  The original forfeiture complaint and briefing took multiple, differing positions about what acts and theory of infringement the government based its case on, and was unclear on the fundamental issue of "who did what."  The FAC clarifies that the government is alleging that (1) Puerto 80 (2) directly infringed (3) the distribution right (4) by linking to allegedly copyrighted but unauthorized content hosted on other websites, and that (5) Rojadirecta.com and Rojadirecta.org (the "Defendant Domain Names") were used to commit or facilitate that alleged direct infringement by Puerto 80 of the distribution right.  The FAC alleges that Puerto 80's infringement was willful because the copyright holders previously sent generalized copyright notices to email addresses "associated with" the Rojadirecta.org domain name; the government does *not* allege that Puerto 80 received copyright notices relating to the specific allegedly copyrighted, unauthorized works discussed in the FAC.  FAC ¶19(b).  The FAC further clarifies that the government is *not* alleging that Puerto 80 itself hosted unauthorized, copyrighted content.  Finally, the FAC acknowledges that Puerto 80's website hosts a substantial amount of content that the government does not contend is unauthorized, copyrighted content.

The FAC's clarifications and concessions reveal that the FAC should be dismissed for multiple, independent reasons.[1]  *First*, the FAC does not adequately allege criminal copyright infringement, because the conduct it alleges Puerto 80 engaged in does not—as a matter of law—constitute direct infringement, and because the government's allegations, even if proven,

---

[1] Alternatively, should the Court be inclined to deny this motion, Puerto 80 respectfully requests the Court to certify its order to the Second Circuit pursuant to 28 U.S.C. § 1292(b).  *See* section IV, *infra*.

would not suffice to show willfulness.  The government cannot avoid that legal deficiency by falling back once again on the theory that the Defendant Domain Names facilitated criminal copyright infringement, for to read facilitation to extend to the role played by the Defendant Domain Names on the facts alleged would run afoul of the First Amendment's ban on prior restraints; "facilitation" (like all statutory terms) must not be construed so broadly as to be rendered unconstitutional.  *Second*, the government's effort to seize the Defendant Domain Names violates the First Amendment because it suppresses a substantial amount of unquestionably protected speech.  The government could have chosen many less restrictive ways of targeting whatever copyright infringement might exist.  *Third,* even assuming *arguendo* that Puerto 80's alleged conduct could constitute direct and willful infringement, the FAC affirmatively demonstrates that Puerto 80's alleged conduct did not take place in the United States, and therefore does not violate the copyright laws of the United States, which do not apply extraterritorially.  Because these defects cannot be cured, the FAC should be dismissed without leave to amend.

## II.    FACTUAL ALLEGATIONS AND ADMISSIONS

The FAC makes clear that the underlying conduct at issue is "streaming live sporting event telecasts . . . over the Internet without authorization."  FAC ¶5.  It alleges that violations occur when "copyright-protected content" is captured without the authorization of the rights-holder and then loaded onto an "illegal streaming website[]."  *Id.* ¶6.  The FAC refers to sites that actually contain unauthorized copyrighted content as "illegal streaming websites" (*id.*) and as "cyberlocker websites."  *Id.* ¶12.  It distinguishes sites that *contain* unauthorized copyrighted content from sites which do not contain such content, but which *link* to sites that do; the FAC calls those latter sites "linking websites."  *Id.* ¶13.  The FAC is crystal clear that while linking sites may contain links to unauthorized copyrighted content available on other websites, which links are allegedly organized to allow users to locate such content, the linking sites themselves do not contain or host such content.  *Id.*

The FAC alleges that Puerto 80 operates—and that prior to seizure the Defendant Domain Names resolved to—a linking site (the "Rojadirecta" site).  *Id.* ¶¶17(b), 22.  It alleges that the links on Rojadirecta "were purposefully aggregated and organized by the owner(s) and/or operator(s) of . . . Rojadirecta."  *Id.* ¶17(d).  It admits that Rojadirecta was a "linking" website (*id.*), and admits that the allegedly unauthorized copyrighted content to which Rojadirecta linked "ran on a live stream *from another website.*"  *Id.* ¶17(g) (emphasis added).

The FAC alleges that between December 12, 2010 and January 5, 2011, government agents clicked on certain links on Rojadirecta and thereby linked to and were able to view certain specified content (*id.* ¶¶18-20) hosted on different websites (*id.* ¶¶13, 17(b)).  It alleges that the sports leagues had sent Rojadirecta notices complaining that Rojadirecta was engaged in copyright infringement, but does not allege that any of the notices related to any of the specific events viewed by the agents, or even that the notices identified any specific infringing content at all.  *Id.* ¶21(b).  It alleges that the agents did not know that the specific events they viewed were unauthorized until they personally spoke to representatives of the leagues.  *Id.* ¶¶19, 21(a).

The FAC does not allege that *any* of the content found on the Rojadirecta site is infringing.  Rather, the government alleges that the infringing content is hosted on third-party websites.  FAC ¶13.  Nor does the FAC allege that all of the content on Rojadirecta was "dedicated to making infringing content available," but only that "more than half" of it was.  *Id.* ¶17(d).  It thus effectively concedes that a substantial amount—up to almost half—of the content on Rojadirecta was unrelated to any alleged copyright infringement.

The FAC affirmatively alleges that the Rojadirecta site was hosted on a computer based in Canada.  *Id.* ¶17(j).  It contains no allegation that the Defendant Domain Names or Puerto 80 took any action whatsoever with the borders of the United States, other than alleging that the Defendant Domain Names were registered with Internet registries based in the United States.  *Id.* ¶17(a).  The FAC does not allege that the act of registering the domain names is an act of infringement.

### III.    ARGUMENT

#### A.    The Government Has Not Alleged Criminal Copyright Infringement.

The FAC alleges that Puerto 80 engaged in criminal copyright infringement by purposefully "aggregate[ing] and organ[izing]" links on the Rojadirecta website to unauthorized copyrighted content, even though that content itself was not contained on Rojadirecta and in fact was hosted elsewhere.  *Id.* ¶17(d).  According to the FAC, the Rojadirecta site itself does not contain *any* infringing content.  The government describes Rojadirecta as a "linking" website, which "collect[s] and catalog[s] links to files on third party websites that contain illegal copies of copyrighted content."  FAC ¶¶13, 17(b).  The links themselves are not copyrighted, and are not the content the government is alleging has been infringed.  The government has alleged neither the *actus reus* nor *mens rea* required to make out a claim of criminal copyright infringement against Puerto 80, and thus its forfeiture complaint fails.  17 U.S.C. § 506(a).

#### 1.    "Aggregating links" is not direct copyright infringement.

Hosting links to content stored elsewhere is not distribution; it is therefore not direct infringement.[2]  This is a firmly established legal proposition that has been affirmed time and time again by many courts.  *See CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 546 (4th Cir. 2004) ("Because LoopNet, as an Internet service provider, is simply the owner and manager of a system used by others who are violating CoStar's copyrights and is not an actual duplicator itself, it is not *directly* liable for copyright infringement.") (emphasis in original).  *Accord Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 717 (9th Cir. 2007) (party from whose site content is actually transmitted and subsequently displayed on the end-user's screen is responsible for display, not search engine that merely links to that content); *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1202 n.12 (N.D. Cal. 2004) ("hyperlinking per se does not constitute direct copyright infringement because there is no copying"); *Arista Records, Inc. v. MP3Board,*

---

[2]  "Distribution" is the delivery of copies of a work to the public by means such as sale, rental, or lending.  17 U.S.C. § 106(3).  The government has not alleged that Puerto 80 engaged in any form of infringement other than distribution.

*Inc.*, No. 00 CIV. 4660(SHS), 2002 WL 1997918, at *4 (S.D.N.Y. Aug. 29, 2002) (linking to content does not implicate distribution right and thus does not give rise to liability for direct copyright infringement); *Ticketmaster Corp. v. Tickets.com, Inc.*, 54 U.S.P.Q.2d 1344, 1346 (C.D. Cal. 2000) ("[H]yperlinking does not itself involve a violation of the Copyright Act (whatever it may do for other claims) since no copying is involved. . . ."); *Bernstein v. JC Penney, Inc.*, No. 98-2958 R EX, 1998 WL 906644, at *1 (C.D. Cal. Sept. 29, 1998) (granting motion to dismiss on the ground that hyperlinking cannot constitute direct infringement).

Nor does it matter whether the links are "purposefully aggregated and organized."  In none of the cases cited above was that distinction drawn; the government has never once in this proceeding pointed to any case in which "purposeful organization" was held sufficient to render linking in and of itself an act of infringement, and we are aware of none.  To the contrary, cases have held that the type of conduct alleged by the government is not, as a matter of law, direct infringement.  *See, e.g.*, *In re Napster, Inc. Copyright Litig.*, 377 F. Supp. 2d 796 (N.D. Cal. 2005); *Arista Records*, 2002 WL 1997918, at * 1.

In *Napster*, the court rejected a theory of direct liability based on a file-sharing site's "indexing" of and making available for distribution and download copyrighted works.  Plaintiffs alleged that "Napster itself directly infringed plaintiffs' distribution rights by maintaining a centralized indexing system listing the file names of all MP3-formatted music files available on the Napster network."  377 F. Supp. 2d at 802.  The court found that the plaintiff's "'indexing' theory [fell] well short of meeting the requirements for establishing direct copyright infringement," *id.* at 805, since "merely listing a work in a directory does not result in the actual transfer of a copy of the work and thus does not violate the copyright owner's distribution right." *Id.* at 802 (citing Napster's argument).

In *Arista Records*, 2002 WL 1997918, at * 1, plaintiffs sued a website for secondary copyright infringement, alleging that it "provide[d] users with links to pirated copies of the record companies' copyrighted musical recordings, thereby facilitating the users' infringement of the record companies' copyrights."  "[N]o music files were located on the MP3Board Web site;

5

rather, the Web site featured an automated search engine that searched for, aggregated and organized links to media files on the Web, and provided a tutorial offering users instruction in how to locate and download such files." *Id*. The record companies and the Recording Industry Association of America "conclusively established that links to unauthorized infringing files were posted on the MP3Board Web." *Id.* at *4. The "volitional" conduct of MP3Board was at least as substantial as what the government has alleged here: MP3Board operators "personally assisted users in obtaining particular songs that the users requested," and MP3Board admitted to being "generally aware that some of the music files . . . may contain infringing material," and admitted "that it 'allows' and 'generally encourages' site visitors to download music files, thus promoting the 'highly effective facilitation of access to popular music.'" *Id.* at *3.

On these facts, the court could not find that "direct infringement resulted from MP3Board's operations." *Id*. In other words, the fact that MP3Board had aggregated links to unauthorized, infringing content was not enough to show that "one of the exclusive rights granted to copyright holders by 17 U.S.C. § 106 [was] violated." *Id*.

As in *Napster* and *Arista Records*, Puerto 80 cannot, as a matter of law, be "distributing" works by linking to works hosted by a third-party, even where those links are "purposefully aggregated and organized." And a good thing too; such a theory would ensnare Microsoft, Yahoo!, Google, and countless other search engines in the web of criminal copyright infringement, for each of them purposefully aggregate and organize the links on their site to make material (including infringing material) easier to find. Puerto 80's website does what these and millions of other websites do—it links to material that already exists on the Internet. *See, e.g.*, http://www.google.com; http://www.bing.com; http://en.wikipedia.org.

At the hearing on Puerto 80's first motion to dismiss, counsel for the government posited that there is not "any plausible argument that what Google does is substantially connected to . . . copyright infringement." 12/6/11 Tr. at 32:2-5. But here, the government's allegations of Puerto 80's infringement are predicated on precisely the same conduct that it claims distinguishes Google and other linking sites: the display of purposefully aggregated and organized links to

content existing elsewhere on the Internet.  That is precisely what a search engine does.  *See Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 125 (2d Cir. 2009) ("Google provides a list of links to websites, ordered in what Google deems to be of descending relevance to the user's search terms based on its proprietary algorithms."); *Ascentive LLC v. Opinion Corp.*, No. 10-cv-4433(ILG)(SMG), 2011 WL 6181452, at *2 n.4 (E.D.N.Y. Dec. 13, 2011) ("After [a user] prompts the search engine to begin its search, the search engine will provide a list of links to websites in order of their relevance to the search terms.").

Facilitating access to information by linking is, quite simply, the basis of the Internet as we know it.  *See Cyberspace Communications, Inc. v. Engler*, 55 F. Supp. 2d 737, 743 (E.D. Mich. 1999) ("Almost all Web documents contain "links," which are short sections of text or image that refer and link to another Web document").  It is no wonder, then, that courts are unanimous in concluding that merely linking to another page is not an act of direct copyright infringement.  Accordingly, the government's allegations of criminal copyright infringement based on linking must fail.

> **2.    Even assuming linking could give rise to secondary liability, the government has not alleged indirect infringement.**

The government cannot fall back on theories of indirect criminal liability to allege direct infringement against Puerto 80.

First, the government has not alleged that someone other than Puerto 80 committed willful, for-profit criminal copyright infringement, as it would be required to do in order to proceed under a theory of indirect liability such as contributory copyright infringement, or aiding and abetting.  *See United States v. Cohen*, 260 F.3d 68, 77 (2d Cir. 2001) (aider and abettor liability requires "proof that someone other than the defendant committed the underlying crime"); *United States v. Osorio Estrada*, 751 F.2d 128, 132 (2d Cir. 1984) ("an aider and abettor may not be convicted unless the proof establishes that the underlying offense was committed by someone beyond a reasonable doubt").  The FAC attempts to plead that Puerto 80's "linking" activities constitute criminal copyright infringement, *e.g.*, FAC ¶¶19, 21 (alleging

willfulness on the part of the owners or operators of the Rojadirecta website), but fails to allege acts of infringement by persons other than the operators of the Rojadirecta website which, if proved, would constitute criminal infringement.  The FAC does not allege, for example, which third parties Puerto 80 allegedly aided and abetted, or that those third parties were acting willfully and for profit.  For this reason, the government has not sufficiently pled that Puerto 80 aided and abetted any violation enumerated by the forfeiture statute.  *See G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 263 (S.D.N.Y. 2001) (complaint failed to state a RICO claim based on predicate act of aiding and abetting witness tampering where it failed to allege "who threatened [the witness] or how the Defendants supposedly aided and abetted that threat"); *Strong & Fisher Ltd. v. Maxima Leather, Inc.*, No. 92 Civ. 1779 (JSM), 1993 WL 277205, at *2 (S.D.N.Y. Jul. 22, 1993) ("In order to adequately plead an aiding and abetting claim, the complaint must clearly allege which predicate acts the defendant aided and abetted and how the defendant participated as an aider and abetter.").

Even had the government tried to allege an underlying act of criminal infringement, however, the reach of the criminal copyright statute does not extend to contributory infringement.[3]  The government conceded at the hearing on Puerto 80's first motion to dismiss that "there is no statutory offense for contributory copyright infringement."  12/6/11 Tr. at 30:6-7.  That is because federal crimes "are solely creatures of statute."  *Liparota v. United States*, 471 U.S. 419, 424 (1985); *accord United States v. Lanier*, 520 U.S. 259, 267 n.6 (1997) ("Federal crimes are defined by Congress, not the courts . . ."), and there is no statutory provision

---

[3] The Department of Justice IP Prosecution Manual (the "Manual") is devoid of any reference to a crime of contributory criminal infringement, and implicitly recognizes that there is none:  in discussing whether an "infringement" occurs to support a charge for criminal infringement, the Manual points only to direct copying.  Department of Justice, Computer Crime & Intellectual Property Section, Prosecuting IP Crimes Manual § II.B.3, available at http://www.cybercrime.gov/ipmanual/02ipma.pdf and attached as Exhibit 7 to Claimant Puerto 80 Projects, S.L.U.'s Request for Judicial Notice filed herewith ("RJN").  Similarly, the leading Goldstein and Nimmer treatises on copyright law are devoid of any reference to a crime of contributory or indirect infringement.  *See* Paul Goldstein, *Goldstein on Copyright* § 13.3 (2005); 4-15 David Nimmer, *Nimmer on Copyright* § 15.01 (2004).

establishing contributory or other secondary copyright infringement.  *See Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984) ("The Copyright Act does not expressly render anyone liable for infringement committed by another."); *Demetriades v. Kaufmann*, 690 F. Supp. 289, 291-92 (S.D.N.Y. 1988) ("Federal copyright law, unlike patent law, does not expressly create any form of derivative, third-party liability.").

Nor can the government proceed on a theory of aiding and abetting, or conspiracy, because the civil forfeiture statute does not permit seizure of property used to conspire to commit criminal copyright infringement, or to aid and abet criminal copyright infringement.  *See* 18 U.S.C. § 2323 (specifying statutory bases for civil forfeiture and making no reference to 18 U.S.C. §§ 2 or 371).

For the same reason, the government has not made allegations sufficient to support forfeiture based on any supposed "facilitation" of criminal infringement by the Defendant Domain Names.  It has not even attempted to allege specific facts that might support a claim that any third party has committed criminal copyright infringement that the Defendant Domain Names could have "facilitated."  And as set forth in section III.A.1, above and in section III.A.4, below, the government has failed adequately to allege that Puerto 80 itself committed criminal copyright infringement that the Defendant Domain Names could have been used to facilitate.

### 3.    A reading of "facilitation" broad enough to encompass Puerto 80's conduct would violate the First Amendment.

Not only has the government failed to allege facilitation; any reading of the term "facilitate" broad enough to permit forfeiture on the facts alleged by the government would violate the First Amendment.

"The term 'facilitate' encompasses 'activity making the prohibited conduct less difficult' or 'more or less free from obstruction or hindrance.'"  *United States v. 3234 Washington Ave.*, 480 F.3d 841, 843 (8th Cir. 2007) (citation omitted).  Whatever that may mean when protected First Amendment expression is not involved, it cannot constitutionally be read to permit seizure of the Defendant Domain Names here.  The FAC does not allege that the Rojadirecta website

itself contained any unauthorized copyrighted content, and avers that up to half of the content on the Rojadirecta site was not dedicated to making unauthorized copyrighted content available. FAC ¶17(d).  Reading the term "facilitate" to allow seizure here would permit the government to seize a search engine, Verizon's wireless network, the phone company, Microsoft Windows, and any web browser application—all of which equally "facilitate" access to the Rojadirecta website, and thus access to the sites to which it links—based merely on a showing of probable cause and without an adversarial hearing.

 *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46 (1989), lays out the procedural requirements that must be met in order for the government to restrict speech.  In *Fort Wayne*, state and local officials (respondents) filed a civil action pursuant to Indiana's RICO laws, alleging that the defendant bookstores had engaged in a pattern of racketeering activity by repeatedly violating Indiana's obscenity laws.  Prior to trial, respondents petitioned for, and the trial court granted, immediate seizure of the bookstores pursuant to a state law that permitted courts to issue seizure orders "upon a showing of probable cause to believe that a violation of [the State's RICO law] involving the property in question has occurred."  *Id*. at 51.  On appeal, the Supreme Court held that the pretrial seizure order was unconstitutional because "there was not—and has not been—any determination that the seized items were 'obscene' or that a RICO violation ha[d] occurred."  *Id*. at 66.  The government's *ex parte* application before a magistrate does not satisfy that test:  the First Amendment "firmly hold[s] that mere probable cause to believe a legal violation has transpired is not adequate to remove [expressive content] from circulation."  *Id.* at 65.  And the legal determination must occur after actual notice to Puerto 80 and a full adversary hearing; "the lack of notice or opportunity to be heard normally renders a prior restraint invalid."  *United States v. Quattrone*, 402 F.3d 304, 312 (2d Cir. 2005).

 Allowing the government to seize the Defendant Domain Names under a theory of facilitation would work precisely the same injury to the First Amendment.  It would permit the government to suppress presumptively lawful speech—Internet links, which enable users to navigate the online world—not after a determination that the speech was, in fact, unprotected,

but upon establishing by a "preponderance of evidence," *see* 18 U.S.C. § 983(c), that the property on which the speech was hosted was used to "facilitate" unproven copyright infringement.  That is the essence of a prior restraint.  *See United States v. Salameh*, 992 F.2d 445, 446 (2d Cir. 1993) ("An order that prohibits the utterance or publication of particular information or commentary imposes a 'prior restraint' on speech.").  Before seizing and shutting down speech, the government must prove in an adversary hearing that the speech in question is not protected.  *See Vance v. Universal Amusement Co.*, 445 U.S. 308, 316 (1980) (statute which "authorize[d] prior restraints of indefinite duration on the exhibition of motion pictures that have not been finally adjudicated to be obscene" held unconstitutional); *Astro Cinema Corp. Inc. v. Mackell*, 422 F.2d 293, 296 (2d Cir. 1970) (holding that the "seizure of a film which is to be shown to a large public audience . . . must be preceded by an adversary hearing.").  The government's use of facilitation would enable it to bypass ever having to show that the links it is blocking were in fact unprotected speech.  And it would allow the government to do precisely what *Fort Wayne* forbade: shut down the bookstore that unquestionably "facilitated" the distribution of allegedly obscene materials without ever having to prove that the books sold in the bookstore were actually obscene.

Permitting the government to proceed under a theory of "facilitation" on the facts alleged in the FAC would enable it to use the forfeiture statute to make an end-run around the First Amendment by seizing a lawful channel of communication.  It would enable the government to shut down a search engine, website, newspaper, and printing press not just *prior* to a determination of the illegality of the content, but without *ever* having to show that it was operating unlawfully.  Such a seizure prevents lawful speech, and constitutes a prior restraint on that lawful speech.  The government's suggested construction and use of the forfeiture statute would render it unconstitutional, and should therefore be rejected.  *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the

Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

### 4.   The government fails to allege willfulness.

Willfulness is an essential element of criminal copyright infringement. *See* 17 U.S.C. § 506(a).  "Even if civil liability has been established, without the requisite *mens rea* it does not matter how many unauthorized copies or phonorecords have been made or distributed:  No criminal violation has occurred."  House Report, Copyright Felony Act, H.R. Rep. No. 997, 102nd Cong., 2nd Sess. 1992, 1992 U.S.C.C.A.N. 3569, P.L. 102-561, RJN Ex. 6.

In the context of criminal copyright infringement, courts have adopted the willfulness standard articulated by the Supreme Court in the context of criminal tax evasion and other criminal statutes. *See United States v. Wise*, 550 F.2d 1180, 1186 (9th Cir. 1977) (defining willfulness by reference to *Screws v. United States*, 325 U.S. 91, 101-03 (1945)); *United States v. Heilman*, 614 F.2d 1133, 1137 (7th Cir. 1980) (same); *United States v. Acevedo-Cruz*, No. CRIM.04-0381-DRD, 2006 WL 448680, at *3 (D.P.R. Feb. 23, 2006), *aff'd*, 503 F.3d 1 (1st Cir. 2007) (defining willfulness by reference to *Cheek v. United States*, 498 U.S. 1992 (1991)); *United States v. Moran*, 757 F. Supp. 1046, 1049 (D. Neb. 1991) (same).  Thus, to show willfulness under the criminal copyright statute, the government must show that "the defendant acted with the purpose of depriving the victim of the interest protected by that right," understanding that the conduct was illegal. *Heilman*, 614 F.2d at 1137; *United States v. Rose*, 149 U.S.P.Q. 820, 824 (S.D.N.Y. 1966) (instructing jury in copyright case that "[a]n act is done willfully if done voluntarily and purposely and with specific intent to do that which the law forbids-that is to say, with bad purpose either to disobey or disregard the law").

### a.   The government's amended allegations of willfulness are insufficient to plead criminal intent.

The government's allegation that the sports leagues sent generalized complaints of copyright infringement to Puerto 80 and that the website thereafter "willfully continued to operate and make available copyright infringing content" (FAC ¶¶19, 21) is not sufficient to

plead that Puerto 80 acted with the specific intent to infringe a copyright. Nothing in the alleged notices would put any reasonable person on notice that any particular content on Rojadirecta was infringing. The government expressly does *not* allege that the NBA or anyone else pointed Puerto 80 to any specific instances of infringement. Rather, the government's theory is that if a copyright owner makes a general statement that "there are links to infringing material on your site," that generalized warning suffices to make a web site owner a willful infringer for any content that later turns out to have been infringing.

That is not the law. In *UMG Recordings, Inc. v. Shelter Capital Partners*, Nos. 09-55902, 09-56777, 10-55732, 2011 WL 6357788 (9th Cir. Dec. 20, 2011), for instance, the plaintiff alleged that a web site that allowed users to post videos to share with others was engaged in copyright infringement because many of the videos posted on the site were infringing. The civil statute under which the claim was litigated had a *lower* standard of knowledge than willfulness; under that civil standard, the defendant had to show both that it "does not have actual knowledge that the material or an activity using the material on the system or network is infringing" and that "in the absence of actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent." 17 U.S.C. § 512(c)(1)(A)(i)-(ii).[4]

UMG argued exactly what the government alleges here: that because the category of works on the site was generally copyrighted, and the defendant had no license from any copyright owner, "Veoh thus must have known this content was unauthorized, given its general knowledge that its services could be used to post infringing material." *UMG*, 2011 WL

---

[4] Section 512 creates a safe harbor protecting qualifying Internet intermediaries from liability for damages in a civil copyright suit. Accordingly, *UMG* was litigated in the context of Veoh's claim to a safe harbor from infringement. While there is no similar safe harbor against civil forfeiture, section 512 is a part of the Copyright Act, and its definition of state of mind is relevant to interpretation of the only other *mens rea* requirement in the Act. *See Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003) (statute's meaning "can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute."); *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002) ("The meaning of a particular section in a statute can be understood in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another.").

6357788, at *9.  The Ninth Circuit rejected this argument.  It held that generalized knowledge of

possible infringement on the site was insufficient to satisfy the knowledge requirement in the

statute.  Its reasoning is directly applicable here:

> [If] general knowledge that one's services could be used to share
> unauthorized copies of copyrighted material, was sufficient to
> impute knowledge to service providers, the § 512(c) safe harbor
> would be rendered a dead letter: § 512(c) applies only to claims of
> copyright infringement, yet the fact that a service provider's
> website contained copyrightable material would remove the
> service provider from § 512(c) eligibility.

*Id*. at *10.  In the same way, reasoning that a site with copyrighted material on it must be

evidence of willfulness reads willfulness out of the statute as a separate requirement from proof

of copyright infringement.

Similarly, in *Viacom International Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514 (S.D.N.Y.

2010), Judge Stanton found "the critical question" in the case to be whether the actual or

constructive knowledge language of § 512 "mean[s] . . . general awareness that there are

infringements (here, claimed to be widespread and common), or rather mean actual or

constructive knowledge of specific and identifiable infringements of individual items."  *Id*. at

519.  The Court's answer was unequivocal: the actual or constructive knowledge requirements in

the Copyright Act "describe knowledge of specific and identifiable infringements of particular

individual items.  Mere knowledge of prevalence of such activity in general is not enough."  *Id*.

at 523.  *Accord Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1108 (W.D. Wash.

2004) ("The issue is not whether Amazon had a general awareness that a particular type of item

may be easily infringed.  The issue is whether Amazon actually knew that specific zShops

vendors were selling items that infringed Corbis copyrights."); *cf. Tiffany (NJ) Inc. v. eBay*

*Inc.*, 600 F.3d 93, 107 (2d Cir. 2010) (drawing a similar conclusion in rejecting a trademark suit:

"For contributory trademark infringement liability to lie, a service provider must have more than

a general knowledge or reason to know that its service is being used to sell counterfeit goods.

Some contemporary knowledge of which particular listings are infringing or will infringe in the

future is necessary.").

The FAC here is devoid of any allegation that Puerto 80 was specifically aware that any of the specific content, hosted on the sites of others, to which it linked, was unauthorized copyrighted content.  Indeed, the government itself could not tell whether the links were to infringing material by looking at the Rojadirecta site; the ICE investigator had to contact the copyright owners directly to determine whether or not the links were to legal content. FAC ¶¶19, 21.  It would be perverse to charge Puerto 80 with constructive knowledge (let alone purpose) that the government itself concedes was not evident from looking at the web site itself.

The government argues that the fact that Puerto 80 indexes and categorizes the links that appear on its site means that it must be acting willfully.  The copyright owner made precisely that argument in *UMG*, and the court rejected it, pointing out that merely because some music videos were unauthorized didn't mean all of them were.  *UMG*, 2011 WL 6357788, at *11. Indeed, in that case, even the fact that Veoh ran advertisements on Google touting the availability of music from particular artists wasn't reason to know of infringement, because some of the material by those artists may well have been posted there legally.  *Id.* at *12.  The same is true here, where links might be to authorized streaming of sports events or to live broadcasts of sporting events in Europe that are not subject to copyright protection.  *See* Opinion and Judgment of the Court of Justice of the European Union in the *Football Association Premier League v. QC Leisure* case nos. C-403/08 and C-429/08, RJN Ex. 2.

      **b.**    **The rule of lenity precludes a finding of criminal infringement.**

To show willfulness, the government must demonstrate not just that Puerto 80 knew certain material was copyrighted but that Puerto 80 intended to break the law.  Although willfulness is a question of fact for the jury, if the applicability of a law to the charged conduct is uncertain, the charges must be dismissed as a matter of law.  *See Dowling v. United States*, 473 U.S. 207, 229 (1985) (where Congress has not spoken "with requisite clarity," any "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity" quoting *Liparota*, 471 U.S. at 427); *James v. United States*, 366 U.S. 213, 221-22 (1961) (reversing conviction where "element of willfulness could not be proven in a criminal prosecution" given the unsettled

state of the law, regardless of defendant's actual reliance on case law); *United States v. Critzer*, 498 F.2d 1160, 1162 (4th Cir. 1974) ("[W]hen the law is vague or highly debatable, a defendant- actually or imputedly- lacks the requisite intent to violate it"); *United States v. Baer*, 662 F. Supp. 126, 129 (W.D.N.Y. 1987) (explaining that "[t]he certainty and clarity of the law at issue is a legal question to be resolved by the court.  In making this determination, the actual state of mind of the defendant is irrelevant" but that where the law is uncertain, "an indictment should be dismissed, regardless whether the [defendant] acted in good faith") (quoting *United States v. MacKenzie*, 777 F.2d 811, 817 (2d Cir. 1985)).

In this case, the rule of lenity precludes a finding that the statute intended to reach the conduct alleged in the FAC.  First, as explained above, the facts supporting "willfulness" would be insufficient to show knowledge of infringement (let alone willfulness) in the civil context. Second, sports copyright owners have twice sued Puerto 80 for copyright infringement, and in both cases the Spanish courts held Puerto 80's conduct legal.  RJN Ex. 1, Decree No. 364/10 at 5 ("the reported actions [of the operators of rojadirecta.com] do not constitute a crime, and the decision to dismiss the action is in accordance with law").  And no United States court has held that the sort of linking conduct alleged by the government constitutes even civil copyright infringement, and many have held that it does not.  *See supra* pp. 4-7.

Moreover, recent events suggest that the very conduct Puerto 80 is alleged to have engaged in is *not* currently unlawful.  Congress recently considered legislation that would have authorized seizure or blocking of domain names for sites primarily directed at copyright infringement, authorized court orders barring search engines from linking to infringing sites, and expanded existing criminal laws to include unauthorized streaming of copyrighted content.  *See* RJN Exs. 3-5, Stop Online Piracy Act ("SOPA"), Protecting, Real Online Threats to Economic Creativity and Theft of Intellectual Property Act ("Protect IP Act"), and Combating Online Infringement and Counterfeits Act ("COICA").  The fact that Congress devoted substantial time and attention to debating *whether* to pass legislation against such conduct is strong evidence that such conduct is not already illegal.  And, of course, as is by now well-known, those efforts were

16

resoundingly rejected after an unprecedented public outcry.[5]  Both the unprecedented public outcry over proposals to legalize domain name blocking of the sort the government has engaged in here and the fact that Congress rejected two proposals to enact it into law, even if they do not demonstrate the error of the government's legal theory, at a bare minimum show that the law lacks clarity.

Accordingly, the fact that the leagues sent generalized letters complaining about infringement in late 2010 cannot be evidence that Puerto 80 knew it was doing anything illegal. Puerto 80 might reasonably have relied on the facts that two courts had already held that the Rojadirecta website was legal, and that every United States court to date had held that the linking conduct alleged by the government is not even civil copyright infringement.  *Accord Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 39 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994) ("[C]onduct that does not support a civil action for infringement cannot constitute criminal conduct under 17 U.S.C. § 506(a).").  The government's amended allegations therefore fail to plead willfulness.

### B.     The Seizure Violates The First Amendment.

The government's continued seizure of the domain names under the guise of the instant forfeiture action presents an additional constitutional problem—it abridges the First Amendment rights of not just registered users of Rojadirecta, but also any of the millions of other Internet users wishing to visit the website.  *See, e.g.*, *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976) ("[T]he protection afforded is to the communication, to its source and to its recipients both."); *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 390 (1969) ("It is the right of the public to receive suitable access to social, political, esthetic, moral, and other ideas and experiences . . . . That right may not constitutionally be abridged . . . .").

---

[5] *See, e.g.*, Statement of Senator Ron Wyden, *available at* http://wyden.senate.gov/issues/issue/?id=e881b316-5218-4bcd-80a1-9112347fe2f4 (noting that on January 18, 2012, "over 15 million Americans took action to contact their representatives in Congress in opposition to the Protect IP and SOPA bills").

The government admits in the FAC that there is substantial material on the Rojadirecta website that is indisputably protected, non-infringing speech, which is not alleged to be "dedicated to making infringing content available." FAC ¶17(d). Indeed, the government alleges only that a bare majority of content on the Rojadirecta website are potentially infringing links; it does not claim the remainder of the content is infringing. On these allegations, the instant action violates the First Amendment.[6]

Even if the goal of the government's seizure of the Defendant Domain Names is not targeted at the protected speech at all, the government's speech restriction is, at a minimum, subject to the intermediate standard of scrutiny set forth in *United States v. O'Brien*, 391 U.S. 367 (1968). *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994) (regulations that impact speech but which are unrelated to the content of that speech are subject to intermediate scrutiny). Under *O'Brien*, a regulation is "sufficiently justified" notwithstanding its effect on speech if it is "within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien*, 391 U.S. at 377. The burden is on the government to show that the restriction of speech is justified under the immediate scrutiny standard. *See Deegan v. City of Ithaca*, 444 F.3d 135, 142 (2d Cir. 2006).

The government cannot show that shutting down the entire Rojadirecta domain name was no greater a restriction than was essential to the furtherance of the government's interest in preventing criminal copyright infringement. *See O'Brien*, 391 U.S. at 377. Although the

_____

[6] Puerto 80 is in a position to assert the rights of its users just as effectively as they would themselves and thus may raise First Amendment concerns on their behalf. *See Virginia v. Am. Booksellers Assoc.*, 484 U.S. 383, 392-93 (1988) (bookstores may assert First Amendment rights on behalf of book buyers); *Sec'y of State v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984) (professional fundraiser may assert First Amendment rights of its client charities); *Craig v. Boren*, 429 U.S. 190, 194-97 (1976); *Pennell v. City of San Jose*, 485 U.S. 1 (1988) (landlord may raise constitutional challenge to rent control ordinance on behalf of tenants).

government need not show that the seizure was the "least speech-restrictive means of advancing [its] interests," it bears the burden of "showing that the remedy it has adopted does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Turner Broad. Sys.*, 512 U.S. at 662, 664-65 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)). A restriction that "is significantly overinclusive . . . is not narrowly tailored." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 948 (9th Cir. 2011). *See also Deegan*, 444 F.3d at 143 (noise regulation that restricted "considerably more than is necessary to eliminate excessive noise" not narrowly tailored to government interest in protecting citizens from unreasonable noise).

Here, the government's seizure shut down the Defendant Domain Names, suppressing all content on it, none of which is alleged to be infringing, and only some of which is alleged to be "making infringing content available." The seizure, by the government's own allegations, "regulate[s] expression in such a manner that a substantial portion of the burden on speech does not serve to advance" the government's goal of combating criminal copyright infringement. *Ward*, 491 U.S. at 799. The government could have advanced its interest in combating criminal copyright infringement without burdening more speech than necessary to further that interest. *See Million Youth March, Inc. v. Safir*, 18 F. Supp. 2d 334, 346 (S.D.N.Y. 1998) (denial of permit for rally not narrowly tailored to city's legitimate public health concerns where such concerns "could have been dealt with [through other means] while allowing the event to go forward"). It could have targeted the infringing acts and parties themselves by bringing charges directly against them. To the extent that the identity of the infringing parties is unknown, the government had the statutory authority to subpoena the ISPs hosting the content to obtain the identity of the allegedly infringing individuals. *See* 17 U.S.C. § 512(h) (authorizing the issuance of subpoenas to identify an alleged infringer). Or the government could have brought a civil lawsuit against Puerto 80 directly and tried to prove its theory of copyright infringement in court. Had it done so, it might have been entitled to enjoin proven acts of infringement, or perhaps even

to a general injunction against infringement on the Rojadirecta sites.  But it would not have been entitled to an injunction shutting down unquestionably non-infringing speech.

Instead of using these less restrictive means of achieving its goal, the government availed itself of the drastic remedy of shutting down the Defendant Domain Names altogether, restricting access to all of the non-infringing content hosted on them.  In doing so, the government arrogated for itself a power to silence speech that even the broadest court order could not give it. That is the most restrictive alternative, not the least restrictive.  Thus, even if the government were to prove the allegations in the FAC, the forfeiture would be unconstitutional because of its collateral effect on users and readers of the website who everyone agrees are not engaged in infringement.

### C.    Copyright Laws Do Not Apply Extraterritorially.

"It is well settled that 'the copyright laws generally do not have extraterritorial application.'"  *Roberts v. Keith*, No. 04-cv-10079(LAP), 2009 WL 3572962, at *4 (S.D.N.Y. Oct. 23, 2009) (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988)) (granting defendant's motion for judgment on the pleadings on claim for copyright infringement where copying took place abroad); *Robert Stigwood Grp. Ltd. v. O'Reilly*, 530 F.2d 1096, 1101 (2d Cir. 1976) ("Copyright laws do not have extraterritorial operation.").  That means that regardless of whether there may be *jurisdiction* over a defendant in the United States, "it is only where *an infringing act occurs* in the United States that the infringement is actionable under the federal Copyright Act."  *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004) (emphasis added).  The Copyright Act "presumptively does not apply to conduct that occurs abroad even when that conduct produces harmful effects within the United States."  *Omega S.A. v. Costco Wholesale Corp.*, 541 F.3d 982, 988 (9th Cir. 2008), *aff'd by an equally divided court*, 131 S. Ct. 565 (2010).

As recently explained in *Elsevier Ltd. v. Chitika, Inc.*, No. Civ. 11-10026-RGS, 2011 WL 6008875 (D. Mass. Dec. 2, 2011), the government cannot bypass this limitation by the simple artifice of downloading the works itself within the United States.  The court in *Elsevier* held that

20

"test downloads" in the United States of "of unauthorized copies of plaintiffs' books, distributed by [the alleged direct infringer, who resided abroad] or other unidentified (and potentially foreign) actors, does not constitute an act of direct infringement occurring entirely within the United States"). *Elsevier* at *3; *accord Elmo Shropshire v. Canning*, No. 10-cv-01941-LHK, 2011 WL 90136, at *3-4 (N.D. Cal. Jan. 11, 2011) (allegation that defendant, a resident of Canada, uploaded a video to YouTube that allegedly infringed the plaintiff's copyright in a song, failed to allege an act of infringement that occurred entirely within the United States).

The FAC argues that Puerto 80 engaged in criminal copyright infringement because it "purposefully aggregated and organized" the links that appear on Rojadirecta. It makes no effort to allege that that aggregation and organization took place in the United States. Nor could it; Puerto 80 is based in Spain. FAC ¶22. The government further alleges that the server on which the Rojadirecta site runs is based in Canada. FAC ¶17(j). It has not alleged a single act of infringement that occurred in the United States. Thus, even had the FAC properly alleged that Puerto 80 committed acts that would constitute infringement, it does not allege that such acts took place in the United States. The complaint thus "falls short of making any clear allegation that" Puerto 80 or any third party "engaged in infringing activity in the United States." *Roberts*, 2009 WL 3572962, at *4. Since it does not allege that any other acts of infringement which took place in the United States, it fails to allege a violation of the Copyright Act. *See id.*

The FAC's allegations that Puerto 80 registered the Defendant Domain Names with U.S. companies confuses *jurisdiction* with *the location of the acts alleged to constitute infringement* and thus is irrelevant. The FAC does not allege that the registration of the Defendant Domain Names was itself an act of criminal infringement. It does not matter whether there is a sufficient connection or nexus between Puerto 80 and the United States; what matters is that the government has not alleged a single act occurring in the United States to permit application of U.S. copyright law. *See, e.g.*, *Palmer*, 376 F.3d at 1258 ("[I]t is only where an infringing act occurs in the United States that the infringement is actionable under the federal Copyright Act. . . ."); *Perfect 10, Inc.*, 487 F.3d at 718-19 (holding that the situs of infringement is the

server which sends the content, not the browser which receives it).  Accordingly, the government cannot base its forfeiture on U.S. copyright law, because it has not alleged the necessary acts within the United States.

## IV.   IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER DENYING PUERTO 80'S MOTION TO DISMISS

Should the Court deny this motion, Puerto 80 respectfully requests the Court to certify its Order to the Second Circuit pursuant to 28 U.S.C. § 1292(b).[7]  This motion plainly involves a "controlling question of law"—namely, whether Puerto 80 can be found liable for direct copyright infringement by virtue of hosting links to allegedly infringing content.  There is no allegation that any infringing content is hosted by the Rojadirecta site itself.  Instead, the amended complaint alleges that Rojadirecta was a "linking" website.  FAC ¶¶17(b), 22.  But whether links to specific content are "purposefully aggregated," *id.* ¶¶17(d), as the government contends, is irrelevant because merely linking to other websites which already exist on the Internet cannot establish direct copyright liability as a matter of law.  There is no need to develop any facts to resolve this question.  Additionally, there is a second controlling question of law raised in this motion, namely, whether copyright law applies extraterritorially to sweep within its scope Puerto 80's alleged conduct.  As set forth in section III.C. above, the allegations of the FAC are clear that no infringing act occurred in the United States.  Thus, there is no need to look outside of the pleadings to resolve this question.

The interlocutory appeal test asks whether "there is substantial ground for difference of opinion."  Puerto 80 believes that there is no difference of opinion as to the direct infringement issue; as noted above, all the courts to have addressed the issue have concluded that linking is *not*

---

[7] Section 1292(b) authorizes the Court to render an otherwise unappealable order (such as an order on a motion to dismiss) immediately appealable if (1) it involves a "controlling question of law," (2) "there is substantial ground for difference of opinion" on that legal issue, and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

infringement.[8]  *See supra* pp. 4-7.  But if this Court is to be the first to depart from that consensus, the fact of overwhelming authority in other decisions to the contrary surely creates a substantial ground for difference of opinion.  As to extraterritoriality, the Second Circuit unequivocally has ruled that copyright laws do not have extraterritorial application.  *See supra*, section III.C.  Were this Court to rule to the contrary, such ruling would undoubtedly create a substantial ground for difference of opinion.

Lastly, it is beyond dispute that an immediate appeal will materially advance the ultimate termination of the litigation.  If this Court were to adjudicate the case even though the government's theory of liability lacked legal basis, an eventual reversal by an appellate court would pose a great cost to both the federal judiciary and the parties.  That is especially true in this case, which will require invocation of Letters Rogatory, depositions in foreign jurisdictions, production and translation of documents in several different languages, not to mention complex issues around comity.

* * *

---

[8] The Second Circuit has not yet had an opportunity to decide these issues.

23

## V.  CONCLUSION

For the reasons stated above, Puerto 80 respectfully requests that the Court grant its motion to dismiss or, in the alternative, to certify the order for interlocutory appeal.

Dated: February 14, 2012                       Respectfully submitted,

                                               DURIE TANGRI LLP

                                        By:  _____*/s/ Ragesh K. Tangri*_____
                                                     Ragesh K. Tangri

                                               Mark A. Lemley (*Pro Hac Vice*)
David Spears                                   Ragesh K. Tangri (*Pro Hac Vice*)
Charlita Mays                                  Johanna Calabria (SBN JC3915)
SPEARS & IMES LLP                              Genevieve P. Rosloff (*Pro Hac Vice*)
51 Madison Avenue, 25th Floor                  217 Leidesdorff Street
New York, NY 10010                             San Francisco, CA 94111
Tel. (212) 213-6996                            Tel. (415) 362-6666

*Attorneys for Claimant*                       *Attorneys for Claimant*
PUERTO 80 PROJECTS, S.L.U.                      PUERTO 80 PROJECTS, S.L.U.