**IN THE UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil Action No. 1:11-cv-04139-PAC |
| v. | **REPLY IN SUPPORT OF CLAIMANT PUERTO 80 PROJECTS, S.L.U.'S MOTION TO DISMISS THE AMENDED COMPLAINT** |
| THE FOLLOWING DOMAIN NAMES: | |
| ROJADIRECTA.ORG, and | |
| ROJADIRECTA.COM, | |
| Defendants *in rem*. | |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ..................................................................................................1

II. THE GOVERNMENT HAS NOT ALLEGED THE ESSENTIAL ELEMENTS
    OF THE UNDERLYING CRIME.................................................................................2

    A.  The Amended Complaint Fails to Plead Specific Infringing Acts. ........................3

    B.  The Government Has Not Pled Willfulness on the Part of Anyone Other
        Than Puerto 80, Whose Intent Is "Irrelevant" According to the
        Government................................................................................................4

    C.  The Government Cannot Show That Infringement Occurred in the U.S. ...............5

III. THE GOVERNMENT CANNOT ALLEGE THAT THE DOMAIN NAMES
     "FACILITATED" CRIMINAL INFRINGEMENT ..........................................................6

    A.  The Government Has Not Alleged a "Substantial Connection" Between
        the Property and Relevant Offenses...............................................................6

    B.  The Government Has Not Offered a Construction of "Facilitation" That
        Would Comport with the First Amendment. ....................................................7

        1.  A restraint on speech is unlawful where it occurs in the context of
            an attempt to enforce *unproven* violations of the law...............................9

        2.  The government cannot justify the seizure by reference to
            *Alexander* or *Arcara*. ...................................................................11

        3.  The government does not dispute that if the forfeiture is a prior
            restraint, it lacks the appropriate safeguards...........................................13

IV. THE REQUEST FOR INTERLOCUTORY APPEAL IS NOW MOOT ........................14

V.  THE GOVERNMENT SHOULD BE DENIED LEAVE TO AMEND YET
    AGAIN...............................................................................................................15

VI. CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Thornburgh,*
    943 F.2d 825 (8th Cir. 1991) ................................................................. 13

*Alexander v. United States,*
    509 U.S. 544 (1993) ..................................................................... 11, 13

*Arcara v. Cloud Books, Inc.,*
    478 U.S. 697 (1986) ..................................................................... 12, 13

*Astro Cinema Corp. Inc., v. Mackell,*
    422 F.2d 293, 296 (2d Cir. 1970) .................................................. 12, 13

*Broughel v. Battery Conservancy,*
    No. 07–Cv–7755, 2009 WL 928280 (S.D.N.Y. Mar. 30, 2009) ................... 3

*Carroll v. President & Comm'rs of Princess Anne,*
    393 U.S. 175 (1968) ............................................................................ 13

*Commodity Futures Trading Com'n v. Vartuli,*
    228 F.3d 94 (2d Cir. 2000) ................................................................. 14

*Fort Wayne Books, Inc. v. Indiana,*
    489 U.S. 46 (1989) ................................................................. 10, 11, 13

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,*
    96 CIV. 1103 (MBM), 1996 WL 724734 (S.D.N.Y. Dec. 17, 1996) ............. 6

*G. & A. Books, Inc. v. Stern,*
    604 F. Supp. 898 (S.D.N.Y.),
    *aff'd,* 770 F.2d 288 (2d Cir. 1985) ...................................................... 12

*Jacobs v. Carnival Corp.,*
    No. 06 Civ. 0606, 2009 WL 856637 (S.D.N.Y. Mar. 25, 2009) .................. 5

*Latino Officers Ass'n, New York, Inc. v. City of New York,*
    196 F.3d 458 (2d Cir. 1999) ................................................................. 11

*Lo-Ji Sales, Inc. v. State of New York,*
    442 U.S. 319 (1979) ............................................................................ 14

*Marcus v. Search Warrant,*
    367 U.S. 717 (1961) ............................................................................ 12

*Marvullo v. Gruner & Jahr,*
    105 F. Supp. 2d 225 (S.D.N.Y. 2000) ..................................................... 3

*MyPlayCity, Inc. v. Conduit Ltd.*,
   No. 10 Civ. 1615, 2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012) ........................................... 1

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ........................................................................................................ 9

*New York Times Co. v. United States*,
   403 U.S. 713 (1971) .................................................................................................. 8, 13

*Quixtar Inc. v. Signature Mgmt. Team, LLC*,
   566 F. Supp. 2d 1205 (D. Nev. 2008) ............................................................................ 10

*Red Lion Broad. Co. v. FCC*,
   395 U.S. 367 (1969) ........................................................................................................ 9

*Reno v. ACLU*,
   521 U.S. 844 (1997) ........................................................................................................ 8

*Schneider v. State of New Jersey*,
   308 U.S. 147 (1939) ...................................................................................................... 12

*The Robert Stigwood Group Ltd. v. O'Reilly*,
   530 F.2d 1096 (2d Cir.1976) ............................................................................................ 5

*U.S. v. Lexus LS430*,
   799 F. Supp. 2d 599 (E.D. Va. 2010) ........................................................................ 6, 7

*U.S. v. Rosen*,
   445 F. Supp. 2d 602 (E.D. Va. 2006) ............................................................................ 10

*U.S. v. Two Tracts of Real Property, Located in Carteret County, N.C.*,
   998 F.2d 204 (4th Cir. 1993) ........................................................................................... 7

*United States v. All Funds on Deposit in Dime Sav. Bank of Williamsburg*
   *Account No. 58-400738-1*,
   255 F. Supp. 2d 56 (E.D.N.Y. 2003) .............................................................................. 4

*United States v. Puello*,
   814 F. Supp. 1155 (E.D.N.Y. 1993) ............................................................................... 2

*United States v. Quattrone*,
   402 F.3d 304, 312 (2d Cir. 2005) .................................................................................. 13

*United States v. Various Parcels of Real Property*,
   650 F.Supp. 62 (N.D. Ind. 1986) .................................................................................... 6

*Update Art, Inc. v. Modiin Publ'g, Ltd.*,
   843 F.2d 7 (2d Cir. 1988) ................................................................................................ 5

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976) ........................................................................................................ 9

*Virginia v. American Booksellers Assoc.*,
   484 U.S. 383 (1988) ........................................................................................................ 9

**<u>Statutes</u>**

17 U.S.C. § 506 ................................................................................................ 2, 3

18 U.S.C. § 983 ................................................................................................... 7

18 U.S.C. § 983(c)(3) .......................................................................................... 6

18 U.S.C. § 2323 ................................................................................................. 7

**<u>Other Authorities</u>**

DOJ IP Task Force, Prosecuting IP Crimes Manual Section II.B.2.a. .......................................... 4

## I.      INTRODUCTION

For the last year, the government has consistently told this Court that it intended to show that Puerto 80 had engaged in criminal copyright infringement.  It opposed Puerto 80's request to have the Defendant Domain Names (the "Domain Names") returned pending trial because it said returning the Domain Names "would provide Puerto 80 with the very tools it used to commit the crimes the government alleged it engaged in."  Gov't Opp. to 983(f) Petition, 3, *Puerto 80 Projects, S.L.U., v. United States*, No. 11-cv-3983 (S.D.N.Y Jul. 11, 2011) ECF No. 18.  At oral argument, the government told this Court that the Domain Names were seized "after Judge Maas found probable cause to believe that Rojadirecta was in fact engaged in criminal copyright."  Transcript of Record ("983(f) Tr."), 16, *United States v Rojadirecta.org*, No. 11-cv-4139 (S.D.N.Y. Dec. 6, 2011).  In opposing Puerto 80's motion to dismiss its first complaint for forfeiture, counsel for the government stated at oral argument that it was Puerto 80 whose intent was relevant, Puerto 80 who was guilty of criminal copyright infringement by linking, and officers of Puerto 80 who would be indicted if this were a criminal case.  Transcript of Record ("Mot. to Dismiss Tr."), 24-26, *United States v Rojadirecta.org*, No. 11-cv-4139 (S.D.N.Y. Aug. 2, 2011).  This Court accepted that argument, holding that "[t]he government's allegations at this stage are sufficient to show *direct* infringement" by Puerto 80.  *Id*. at 40 (emphasis added).  This Court dismissed the complaint for failure to plead willfulness, but gave the government leave to attempt to plead that "*the Domain Names* acted willfully."  *Id*. at 41 (emphasis added).

Now the government has changed its tune.  It has abandoned the argument that the Domain Names were used to *commit* criminal copyright infringement by virtue of linking to other websites that host allegedly infringing content.  The government was right to do so; linking simply isn't direct copyright infringement.  *See, e.g., MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615, 2012 WL 1107648, at *12 (S.D.N.Y. Mar. 30, 2012) ("Because the actual transfer of a file between computers must occur, merely providing a 'link' to a site containing copyrighted material does not constitute direct infringement of a holder's distribution right.").

1

The government now states it is proceeding under the theory that the Domain Names were used to "facilitate" criminal copyright infringement committed by someone other than Puerto 80, and that Puerto 80's conduct therefore "is simply irrelevant to this action."  Gov't Opp'n to Mot. to Dismiss Am. Comp. ("Opp'n"), 1, *United States v Rojadirecta.org*, No. 11-cv-4139 (S.D.N.Y. Apr. 16, 2012), ECF No. 49.  But the government has not identified that other person, much less alleged that someone willfully committed criminal copyright infringement.

The Court granted the government leave to amend to allege that Puerto 80 acted willfully. Having now abandoned its theory that Puerto 80 engaged in copyright infringement, the government has declined that invitation, (correctly) noting "it is not Puerto 80's intent that is relevant."  *Id.* at 12 n.7.  Since the Amended Complaint fails to allege willfulness on the part of anyone who *is* relevant—namely the alleged infringer(s)—it fails to state a claim for forfeiture and must be dismissed.

Even if the government were able to identify an actual infringer and allege willfulness, its complaint must be dismissed for another reason.  The government's theory that it can seize and shut down any web site that links to another site that is allegedly infringing, without notice or an adversary hearing on the question of infringement and regardless of the seized site's conduct or intent, is an affront to the First Amendment, which prevents just such unchecked government power.  And the Amended Complaint should also be dismissed for lack of subject matter jurisdiction because American copyright laws indisputably do not have extraterritorial effect.

## II.  THE GOVERNMENT HAS NOT ALLEGED THE ESSENTIAL ELEMENTS OF THE UNDERLYING CRIME

The Amended Complaint does not plead the elements of a violation of 17 U.S.C. § 506, which it must do in order to survive a motion to dismiss.  *See United States v. Puello*, 814 F. Supp. 1155, 1165 (E.D.N.Y. 1993) (sufficiency of civil forfeiture complaint "is entirely dependent on a legally sufficient allegation of a violation of" underlying statutory offense on which forfeiture is based).  *See also* Opp'n, 9 (acknowledging that the government must allege an offense under 17 U.S.C. § 506).

### A.    The Amended Complaint Fails to Plead Specific Infringing Acts.

The government fails to allege an act of infringement by any individual.  "[I]t is axiomatic that plaintiff's claims cannot rest on inchoate and conclusory accusations of unauthorized copying."  *Broughel v. Battery Conservancy*, No. 07–Cv–7755, 2009 WL 928280, at *4 (S.D.N.Y. Mar. 30, 2009) (dismissing infringement claims against defendant websites because plaintiff failed to allege any specific infringing acts); *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000) (dismissing complaint where plaintiff failed to plead with "specificity any acts by which either defendant directly or contributorily violated plaintiff's copyright").

The Amended Complaint pleads certain facts regarding the acts of the Rojadirecta website, *i.e.* its "making available" copyrighted content via links.  *See, e.g.,* Am. Comp. ("AC") ¶17(e), *United States v Rojadirecta.org*, No. 11-cv-4139 (S.D.N.Y. Jan. 6, 2012), ECF No. 35 (alleging that the Rojadirecta website "displayed . . . links to content available for viewing"); ¶17(g) (alleging that "the broadcasts made available via the Defendant Domain Names at the Rojadirecta website were not authorized by the relevant copyright holders"); ¶19(a) (alleging that the Rojadirecta website distributed sporting event telecasts).  But as the government itself now reasons, Puerto 80's conduct and intent are irrelevant.  It is the actual direct infringer who must be identified; that is the person whose acts the Domain Names purportedly facilitated.

The government has not pled any facts regarding this alleged direct infringer.  The Amended Complaint does not allege the source of the allegedly infringing broadcasts, how they got there, or who put them there.  It alleges that the broadcasts ran "on a live stream from another website" and those broadcasts were "not authorized by the relevant copyright holders," AC ¶17(g), but pleads no other facts regarding these acts of alleged infringement.  Because the government has now—correctly—abandoned its original theory that Puerto 80's activities constitute a violation of 17 U.S.C. § 506, it must allege other acts of direct infringement by someone who had a willful intent.  Having failed to do so, the Amended Complaint should be dismissed.  Significantly, the government's opposition is entirely silent as to Congress's rejection

of SOPA, Protect IP Act and COICA, legislation which would have authorized the government to do and seek the very thing sought here:  seizure of domain names for sites allegedly directed at copyright infringement and a court order barring search engines from linking to infringing sites. *See* RJN Exs. 3-5, ECF No. 43.  The government should not be permitted to proceed under a legal theory which Congress considered and rejected.

   **B.**  **The Government Has Not Pled Willfulness on the Part of Anyone Other Than Puerto 80, Whose Intent Is "Irrelevant" According to the Government.**

   Because willfulness is an essential element of the offense on which the government's theory of forfeiture rests, in order to make out a claim for forfeiture, the government must allege that any copyright infringement was done willfully.[1]  *See United States v. All Funds on Deposit in Dime Sav. Bank of Williamsburg Account No. 58-400738-1*, 255 F. Supp. 2d 56, 70 (E.D.N.Y. 2003) (analyzing whether proposed Amended Complaint for forfeiture adequately alleged all elements of the underlying crime, including intent).  The government has not, as this Court previously granted it leave to do, alleged "an act of infringement which is willful *on the part of the infringer*."  983(f) Tr., 29:11-12.

   As noted above, the Amended Complaint does not even identify who the alleged criminal infringers are.  It certainly does not plead that these unidentified infringers acted willfully, nor does it plead a single fact from which willfulness on the part of these unidentified alleged infringers could be inferred.

---

[1] The government misstates the standard for willfulness in the criminal context, suggesting that a "reckless disregard" may suffice to show willfulness.  Opp'n, 12 n.7.  As the DOJ's own manual acknowledges, "[m]ost courts that have interpreted 'willfulness' in criminal copyright cases have adopted the more stringent standard . . . the intentional violation of a known legal duty."  *See* DOJ IP Task Force, Prosecuting IP Crimes Manual Section II.B.2.a.  And in its prior appearance before this Court the government acknowledged that it would have to meet the higher standard. *See* ("Mot. to Dismiss Tr.," 17:6-7 ("I believe that [the government] would have to establish that they knew that the conduct was illegal.").  Nor does the government respond to any of the cases Puerto 80 cited establishing that standard in the copyright context.  *See* Mem. of Law in Supp. of Puerto 80's Motion to Dismiss Pl's Amended Complaint, 12 (citing cases).

This Court previously held that in the absence of an allegation of notice actually delivered to the infringer, there was "no basis to find that" Puerto 80 acted willfully:

> The government concedes that the complaint does not actually allege that the Domain Names or Puerto 80 received notice . . . . Without these factual allegations, there is no basis to find that the Domain Names acted willfully.

983(f) Tr., 41:9-10.  That the operators of the Rojadirecta website allegedly receive notice from the relevant copyright holders is immaterial; as the government admits, "it is not Puerto 80's intent that is relevant."  Opp'n, 12 n.7.  What *is* relevant is the intent of the alleged infringers— but the government does not plead willfulness on their part.  Because the Amended Complaint is devoid of any allegation that notice of infringement was delivered directly to those (still unidentified) infringers, there is "no basis to find that" the newly-alleged infringers acted willfully.  983(f) Tr., 41:9-10.

### C.    The Government Cannot Show That Infringement Occurred in the U.S.

The government concedes, as it must, that American copyright laws do not have extraterritorial effect.  *See Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 7, 73 (2d Cir. 1988). Instead, it argues that a copyright claim may arise for infringing acts abroad where those acts are "permitted or initiated by predicate acts of infringement within the United States."  Opp'n, 23. The government then posits that it is "inconceivable" that a predicate act of infringement did not occur within the United States simply because the Amended Complaint "concerns itself" with piracy of athletic events "involving American sports leagues."  But nowhere does the g allege what the offending predicate act is, why it violates the copyright law, who has committed the act, or—as is essential for establishing jurisdiction—*where* it was committed.  It is the government's burden to make just such a showing.  *See Jacobs v. Carnival Corp.*, No. 06 Civ. 0606, 2009 WL 856637, at *4 (S.D.N.Y. Mar. 25, 2009) ("[B]ecause . . . the Copyright Act has no extraterritorial application, *see The Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096, 1101 (2d Cir.1976), *it is incumbent upon the Plaintiffs to allege where the specific infringements took*

*place as well*.") (emphasis added).  *See also Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 96 CIV. 1103 (MBM), 1996 WL 724734, at *5-6 (S.D.N.Y. Dec. 17, 1996).[2]

## III. THE GOVERNMENT CANNOT ALLEGE THAT THE DOMAIN NAMES "FACILITATED" CRIMINAL INFRINGEMENT

### A. The Government Has Not Alleged a "Substantial Connection" Between the Property and Relevant Offenses.

The government has not sufficiently alleged that the Domain Names had a "substantial connection" to any act of infringement committed by unspecified third parties.  18 U.S.C. § 983(c)(3) ("if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense . . . the Government shall establish that there was a substantial connection between the property and the offense").  "Specific facts must be alleged to show the 'substantial connection' between the property" and the underlying crime.  *United States v. Various Parcels of Real Property*, 650 F.Supp. 62, 65 (N.D. Ind. 1986).  *See also U.S. v. Lexus LS430*, 799 F. Supp. 2d 599, 602 (E.D. Va. 2010) ("Accordingly, under *Iqbal* and *Twombly's* pleading standard, the Government must assert a plausible claim for civil forfeiture by alleging sufficient facts to show that a substantial connection exists between the property it seeks to have forfeited and the offense.").  The government does not allege facts that suggest a "substantial connection" between the Domain Names and the unspecified acts of infringement.

Having now abandoned its theory that "the offense" is Puerto 80's linking to sites that host allegedly infringing material, the "substantial connection" that must be shown is between the Domain Names and the direct, for-profit, willful infringement of a copyright by someone other than Puerto 80 (whose conduct is "irrelevant"). The property is the Domain Names.  The underlying offense is criminal copyright infringement by an unnamed third party.  The

---

[2] The government's request to take jurisdictional discovery should be denied.  The government has *affirmatively asserted* that Puerto 80's actions and knowledge are *irrelevant*.  In light of that concession—and in the absence of any effort even to articulate, much less establish, what facts relevant to the extraterritoriality question might be within Puerto 80's knowledge, there can be no basis for permitting discovery from Puerto 80 for such a purpose here.

government confuses this analysis, suggesting that Puerto 80's alleged "facilitation"—its linking and aggregating links—is the "property" to which a substantial connection must be shown. Opp'n, 15.  That analysis is incorrect; the question is whether the *property*—not Puerto 80's *use of the property*—had a substantial connection to the underlying criminal acts committed by third parties.

The Amended Complaint alleges no such connection.  It focuses on Puerto 80's activities, but as the government now concedes, Puerto 80's conduct is irrelevant.  Per the Amended Complaint, any infringement occurred on third party websites not operated or owned by Puerto 80.  The government does not allege that any third party infringers had any control over or influence on Puerto 80 or the Domain Names.  *Cf. U.S. v. Two Tracts of Real Property, Located in Carteret County, N.C.*, 998 F.2d 204, 213 (4th Cir. 1993) (criminal actor's lack of legal interest in the property "necessarily renders the connection between the [property] and the underlying criminal activity less 'substantial' and more tenuous").  The Domain Names have no power to prevent others from accessing the allegedly infringing sites—which are accessed via different URLs that are not under Puerto 80's control.  And the government does not allege that the Domain Names made possible any act which constitutes an essential element of criminal copyright infringement (nor could it, since the allegedly infringing third party sites are still operating with exactly the same content even after the seizure of Domain Names).  *Cf. U.S. v. Lexus LS430*, 799 F. Supp. 2d at 607 ("substantial connection" adequately alleged between automobile and claimant's transport of minor to engage in illicit sexual activity where the "element of transportation is essential to the offense itself").

## B.   The Government Has Not Offered a Construction of "Facilitation" That Would Comport with the First Amendment.

Under the government's construction of 18 U.S.C. §§ 983 and 2323, every domain name that pointed to a website containing links to infringing copies would "facilitate" and have a "substantial connection" to the offense of criminal copyright infringement, and would therefore be subject to forfeiture.  The broad construction of the term "facilitation" the government seeks

would give it the power to shut down google.com, yahoo.com, bing.com, or any of an array of other channels of communication that—like every site on the Internet—link to content provided by third parties that might or might not be infringing.  The property in question is two domain names, which (in the government's words) are merely "labels" that "resolve" to websites, and are distinct from the servers that host the website or any content of it.  *See* AC ¶ 17(j).  The relationship of a domain name to an act of infringement that occurs on a site other than the one to which the domain name points is anything but "substantial."  The government's theory would have allowed it to seize the New York Times issue that published the Pentagon Papers and destroy it, on the theory that the New York Times was facilitating Daniel Ellsberg's violation of national security laws.  And the Times would have had no opportunity to show that its speech was lawful.  There is no reason to think Congress intended the forfeiture statute to extend so broadly.  And even if it had, Congress lacks the power to confer such plenary control over speech on government agents acting without judicial sanction.  *See New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (effort to block publication of information alleged to violate the law in advance of legal hearing was an unconstitutional prior restraint).

Internet domains are the 21st century equivalent of printing presses.  *See Reno v. ACLU*, 521 U.S. 844, 870 (1997) (noting that through use of the Internet, "any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox. Through the use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer.").  Seizing domain names blocks the speech of those pamphleteers, preventing them from directing others to the ideas they wish to promote.  Under its theory of "facilitation," the government seeks an order of forfeiture in the absence of *any* legal determination that the links in question are unprotected and in the absence of any allegation or finding that the property owner has committed a wrong for which the forfeiture is punishment.  Such an order would amount to a prior restraint on speech that suppresses Puerto 80's users' and readers' protected

First Amendment activities.[3]

### 1.   A restraint on speech is unlawful where it occurs in the context of an attempt to enforce *unproven* violations of the law.

The government argues that the links on the Rojadirecta website are not protected speech because they constitute copyright infringement.  But that argument exactly misses the point of the prior restraint doctrine.  Unless and until there has been a final determination on the merits after an adversary hearing, there is no basis to find that criminal copyright infringement occurred on the third party sites to which the Rojadirecta website linked.

Similarly, in a footnote, the government suggests that the absence of adequate process is excused by the fact that it was targeting copyright infringement, while most of the prior restraint cases had involved obscenity and therefore might affect "presumptively protected materials." Opp'n, 20 n.11.  This distinction finds no support whatsoever in the case law.  To the contrary, courts have repeatedly rejected the rule that enforcement schemes are categorically exempted from First Amendment scrutiny even if the speech in question is ultimately unprotected.  *See New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) ("Like insurrection, contempt, advocacy of unlawful acts, breach of the peace, obscenity, solicitation of legal business, and the various other formulae for the repression of expression that have been challenged in this Court, libel can claim no talismanic immunity from constitutional limitations.  It must be measured by

---

[3] The hundreds of thousands of registered users of Rojadirecta cannot access their accounts or participate in forum discussions using the Rojadirecta.com and Rojadirecta.org domain names as a result of the seizure.  Nor can they post or follow links to other websites.  The government's speech restriction affects not just registered users of Rojadirecta, but also any of the millions of other Internet users wishing to visit the website and see the content linked therein.  The First Amendment protects viewers and listeners as well as speakers.  *See, e.g., Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976) ("[T]he protection afforded is to the communication, to its source and to its recipients both."); *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 390 (1969) ("It is the right of the public to receive suitable access to social, political, esthetic, moral, and other ideas and experiences . . . That right may not constitutionally be abridged . . .").  And the government does not dispute that Puerto 80 is in a position to assert the rights of its users just as effectively as they would themselves and thus may raise First Amendment concerns on their behalf.  *See Virginia v. American Booksellers Assoc.*, 484 U.S. 383, 392-93 (1988) (bookstores may assert First Amendment rights on behalf of book buyers).

standards that satisfy the First Amendment."); *U.S. v. Rosen*, 445 F. Supp. 2d 602, 629-30 (E.D. Va. 2006) (rejecting "government's proposed categorical rule that espionage statutes cannot implicate the First Amendment"); *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 566 F. Supp. 2d 1205, 1214 (D. Nev. 2008) ("Caution is warranted with respect to purported per se rules.  In particular, a per se assertion that the First Amendment does not protect tortious speech is not terribly helpful for the purposes of legal analysis.").  Even if copyright infringement, once proven, is similarly unprotected, the risk of banning protected speech is at least as great when the government shuts down an entire Web site without having proven its case as when it shuts down a pornographic bookstore that had previously been found liable for violating the obscenity laws on dozens of occasions.  *See Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 50-51 (1989).

The government erroneously argues that "[t]he Supreme Court's imposition of procedural safeguards in *Fort Wayne* turned on the nature of the seizure, which was targeted at the books themselves because they were allegedly obscene."  But the Court's determination that the seizure was a prior restraint in *Fort Wayne* did not hinge on the objective of the government's law enforcement efforts.  In fact, the Indiana Supreme Court below had found that the seizure was "not based on the nature or suspected obscenity of the contents of the items seized, but upon the neutral grounds that the sequestered property represented assets used and acquired in the course of racketeering activity."  *Fort Wayne*, 489 U.S. at 64.  The Supreme Court did "not question of the holding of the court below that adding obscenity-law violations to the list of RICO predicate crimes was not a mere ruse to sidestep the First Amendment," and further assumed that the content at issue was "forfeitable (like other property such as a bank account or a yacht) *when it is proved that these items are property actually used in, or derived from, a pattern of violations of the State's obscenity laws*."  *Id*. at 65 (emphasis added).  The Court held that "[e]ven with these assumptions . . . the special rules applicable to removing First Amendment materials from circulation are relevant here," and that the seizure was an unlawful prior restraint because there was not any determination that the seized items were unprotected speech or that a RICO violation *had occurred.  Id.* at 65-66.

10

As in *Fort Wayne*, the government here has seized an entire business devoted to publishing and effectively suppressed all of the expressive content hosted on it, including political discussions, commentary, and criticism by the site's users as well as links to information hosted elsewhere, based at most on a showing of probable cause, and without any court ever determining in an adversary hearing whether the seizure was "actually warranted" under the relevant statutes.  *Id*. at 67.  That is unconstitutional.  *Accord Latino Officers Ass'n, New York, Inc. v. City of New York*, 196 F.3d 458, 465 (2d Cir. 1999) ("The danger of a prior restraint, as opposed to *ex post* disciplinary action, is precisely that making predictions *ex ante* as to what restrictions on speech will ultimately be found permissible is hazardous and may chill protected speech.").

        **2.**       **The government cannot justify the seizure by reference to *Alexander* or *Arcara*.**

The government points to "the time-honored distinction between barring speech in the future and penalizing past speech."  *Alexander v. United States*, 509 U.S. 544, 553-54 (1993).  That is the right distinction.  But the government's actions are on the wrong side of the line.  It seized the Domain Names precisely in order to shut down the speech (*i.e.* links) on the website to which the Domain Names pointed (speech which is not alleged to be copyright infringement), and the speech that the Domain Names were allegedly facilitating.  Mot. to Dismiss Tr., 13:6-10 (stating that seizure of the Domain Names "is sending a message that the use of such domain names that are controlled by the United States are not going to facilitate criminal copyright infringement, that the United States is not going to permit that.  It sends a message; it has a deterrent effect").  The government simply cannot do what it has done here: block access to the speech while avoiding the need to ever prove that the speech in question is unprotected.  That is the classic definition of a prior restraint on speech.[4]

---

[4]  Nor can the government defend its seizure on the ground that there are other ways people might find the speech in question.  While the "availability of alternative means of communication is relevant to an analysis of 'time, place, and manner' restrictions," it cannot justify a prior restraint.  *See G. & A. Books, Inc. v. Stern*, 604 F. Supp. 898, 912 (S.D.N.Y.),

The government attempts to analogize its *ex parte* seizure of the Domain Names to the post-hearing restraint on speech that occurred in *Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986). *Arcara* involved the incidental suppression of expressive activity as punishment for a *proven violation of a law*; it does not address the standard applicable to the seizure that occurred here, where there was no demonstrated violation of any law.

The challenged action in *Arcara* was an "order of abatement . . . direct[ing] the effectual closing of" any building *found* to be a public heath nuisance in a civil or criminal proceeding. *Arcara*, 478 U.S. at 699-700. The Court noted that the closure order sought "would not be imposed on the basis of an advance determination that the distribution of particular materials is prohibited," because the "closure order has nothing to do with any expressive conduct at all." *Id.* at 706 n.2. The closure order in *Arcara* was aimed at punishing past conduct (prostitution) that had already been found to be illegal in an adversarial proceeding, and the incidental burden on speech resulting from closure of the premises had "nothing to do with books or other expressive activity." *Id.* at 707. By contrast, the government here made an advance determination that the material linked to by the site to which the Domain Names pointed was illegal. And unlike

---

*aff'd*, 770 F.2d 288 (2d Cir. 1985) ("[I]f the [action] amounted to a prior restraint, the ability of plaintiffs to relocate and continue their speech elsewhere would be legally irrelevant."). *See also Schneider v. State of New Jersey*, 308 U.S. 147, 163 (1939) ("[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.").

In *Astro Cinema*, the Second Circuit considered the *ex parte* seizure of a motion picture film pursuant to a warrant issued alleging that the film violated New York's obscenity statute. Although only one copy of the film was seized, and others were being shown at other theaters, the court ruled that the seizure was an unlawful prior restraint. Unlike the seizure of a single book, "[a] film," the court wrote, "is not directed to a single purchaser; it is aimed at all those who would be in the audience on the days that the film is scheduled to be shown." *Astro Cinema Corp. Inc., v. Mackell*, 422 F.2d 293, 296 (2d Cir. 1970). The court continued:

> It is no answer to urge, as the State does, that the [movie theater from which the film was seized] might have been able to procure another copy of the film[.] . . . The point . . . is that if the State wishes to interfere substantially with the distribution of films or books, it must first provide, as we have been instructed, an adversary hearing capable of affording a 'reasonable likelihood' that non-obscene films or books will reach the public.

*Id.* at 295-96 (quoting *Marcus v. Search Warrant*, 367 U.S. 717, 736 (1961).

*Arcara*, the target of the seizure order here was the content on the Rojadirecta site, and the material linked to on the Rojadirecta site.

Nor can the government take solace in *Alexander*. There, the government action found not to run afoul of the First Amendment was "a criminal penalty imposed following a conviction for conducting an enterprise engaged in racketeering activities." *Alexander*, 509 U.S. at 548-49 (quoting *Alexander v. Thornburgh*, 943 F.2d 825, 834 (8th Cir. 1991). The penalty—forfeiture of material found to be obscene—was ordered after a "full criminal trial on the merits," at which the government "established beyond a reasonable doubt the basis for the forfeiture." *Id.* That is not the case here. *Accord Adult Video Ass'n v. Barr*, 960 F.2d 781, 785 (9th Cir. 1992), *vacated sub nom. Reno v. Adult Video Ass'n*, 509 U.S. 917 (1993), *reinstated in relevant part,* 41 F.3d 503 (9th Cir. 1994) (holding RICO's pre-trial seizure provision unconstitutional; explaining that "*Alexander* does not alter our holding that . . . [RICO's pre-trial] seizure provision violates the First Amendment.").

### 3.    The government does not dispute that if the forfeiture is a prior restraint, it lacks the appropriate safeguards.

The government does not dispute that the process by which it seized the Domain Names failed to provide notice or an adversarial hearing before the seizure of the Domain Names was authorized. "[T]he lack of notice or opportunity to be heard normally renders a prior restraint invalid." *United States v. Quattrone*, 402 F.3d 304, 312 (2d Cir. 2005) (citing *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 180 (1968)); *see also Astro Cinema Corp.*, 422 F.2d at 296 (holding that the "seizure of a film which is to be shown to a large public audience . . . must be preceded by an adversary hearing."). The government concedes that it did not follow that procedure here. Its seizure is accordingly invalid as a prior restraint on speech.

The government has repeated time and again that it is merely applying the normal rules of civil forfeiture. But the prior restraint cases make it clear that where the thing being seized is speech or a vehicle for communicating speech, the normal rules of civil forfeiture are insufficient. *See Fort Wayne*, 489 U.S. at 66; *New York Times Co. v. United States*, 403 U.S. at

727 ("Unless and until the Government has clearly made out its case, the First Amendment commands that no injunction may issue."); *Lo-Ji Sales, Inc. v. State of New York*, 442 U.S. 319, 326 n.5 (1979) (noting that the First Amendment imposes special constraints on searches for and seizures of presumptively protected materials).

Even if the government had provided notice and an opportunity to be heard prior to the seizure, an order of forfeiture of the Domain Names under the theory of "facilitation" would be unconstitutional.  Under the government's original theory, it intended to prove that Puerto 80 was itself engaged in direct criminal copyright infringement.  Had it been able to prove such a thing after a full adversary hearing, the government might then have been in a position to argue that the Domain Names should be forfeited because they were instrumentalities of infringement. But a forfeiture order based on a finding that the Domain Names "facilitated" unproven third party acts by virtue of the content on the Rojadirecta website itself would amount to an injunction against all the speech on the Rojadirecta website without the government ever having to prove that the speech was unlawful, and without being able to justify the seizure as punishment for past conduct on the part of the property owner.  That sweeping claim of authority cannot be reconciled with the First Amendment.  *Accord Commodity Futures Trading Com'n v. Vartuli*, 228 F.3d 94, 110 (2d Cir. 2000) ("Whereas past fraud may ordinarily be punished without provoking First Amendment concerns . . . the same is not true of measures such as registration requirements that restrict speech in an attempt to guard against future misrepresentation or abuse.").

## IV.    THE REQUEST FOR INTERLOCUTORY APPEAL IS NOW MOOT

Puerto 80 sought interlocutory appeal of this Court's original ruling that Puerto 80 had engaged in direct criminal copyright infringement by linking to sites containing allegedly infringing content.  The government has expressly abandoned that theory of liability, and it is accordingly waived.  Because the government has chosen to waive the theory on which this Court based its original decision and for which Puerto 80 sought review, there is no longer any

need for this Court to rule on the request for interlocutory review.  Puerto 80 reserves the right to seek interlocutory review of the government's new theory should this Court accept it.

## V.    THE GOVERNMENT SHOULD BE DENIED LEAVE TO AMEND YET AGAIN

This Court dismissed the government's original complaint for failure to plead willfulness. The government's Amended Complaint suffers from the same deficiency.  Indeed, under the government's new theory that Puerto 80 is not the infringer, there is even less in the Amended Complaint that might constitute an allegation of willfulness than there was in the original complaint.  Despite—or perhaps because of—its failure, the government has chosen to address willfulness only in a footnote, suggesting it has little it might be able to add on the question in a third complaint.

The government has held the Domain Names for more than sixteen months without ever being able to articulate or plead a viable legal theory that would justify the seizure.  Indeed, it has as yet been unable to settle on a legal theory at all.  It points to no evidence that it might have been able to plead but did not.  The government should not be given a third bite at the apple.

## VI.    CONCLUSION

The Amended Complaint should be dismissed without leave to amend, and the Domain Names should be promptly restored to Puerto 80.

Respectfully submitted,

DURIE TANGRI LLP

Dated:  May 2, 2012                                    By:  _____ */s/ Ragesh K. Tangri* _____
                                                              Ragesh K. Tangri

                                                          Mark A. Lemley (*Pro Hac Vice*)
David Spears                                              Ragesh K. Tangri (*Pro Hac Vice*)
Charlita Mays                                            Johanna Calabria (SBN JC3915)
SPEARS & IMES LLP                                        Genevieve P. Rosloff (*Pro Hac Vice*)
51 Madison Avenue                                        217 Leidesdorff Street
New York, NY 10010                                       San Francisco, CA  94111
Tel. (212) 213-6996                                      Tel. (415) 362-6666

*Attorneys for Claimant*                                 *Attorneys for Claimant*
PUERTO 80 PROJECTS, S.L.U.                               PUERTO 80 PROJECTS, S.L.U.